(No. 32092.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* PETER KOSEARAS, Plaintiff in Error.

*Opinion filed November 27, 1951.*

WAYNE WILSON, and LOWELL B. SMITH, both of Sycamore, for plaintiff in error.

IVAN A. ELLIOTT, Attorney General, of Springfield, and CLARK H. COUNTRYMAN, State's Attorney, of Sycamore, (HARRY L. PATE, of Tuscola, of counsel,) for the People.

Mr. JUSTICE BRISTOW delivered the opinion of the court:

The plaintiff in error, Peter Kosearas, seeks a review of his conviction by a jury in the circuit court of De Kalb County, which resulted in his being sentenced to the Illinois State Penitentiary for a minimum term of three years and a maximum term of five years. He was charged with uttering a fictitious check with intent to defraud, in violation of the Criminal Code, division I, section 279. This court in *People* v. *Kosearas,* 408 Ill. 179, had occasion to reverse the judgment of conviction of plaintiff in error in his first trial. The circuit court then improperly admitted evidence of his involvement in another felony. This time Kosearas did not testify, so that error has been eliminated.

The evidence presented on behalf of the prosecution shows that plaintiff in error on March 11, 1950, cashed a check in the amount of $125 at the National Bank & Trust Company of Sycamore, Illinois; that the check was made payable to the order of Theo. P. Kosearas and was purportedly signed by "Martin J. Downey" and was drawn on the First National Bank of De Kalb, Illinois; that the check was returned to the bank cashing it marked "no account check;" and that the drawer of the check had no account in the bank on which it was drawn. There were two witnesses from each of the two banks to testify that they had never heard of any person in the community by the name of "Martin J. Downey."

To further support the charges made against the plaintiff in error, a deputy sheriff testified that the purported maker of the check was not listed in the public utility records, telephone books or city directories in both localities. The assistant State's Attorney and first deputy sheriff testified that Kosearas had admitted to them he had written and passed the check in question, and that he had "dreamed up" the name of the purported maker of the check, "Martin J. Downey."

There was proof offered on behalf of plaintiff in error, through the testimony of Helen Doty, a teller of the First National Bank & Trust Company of Sycamore, that he went to the bank on March 13, 1950, and had a conversation with Miss Doty, but the court refused to allow the assistant teller to relate the substance of that conversation. His offer of proof indicated that if she had been permitted to testify she would have stated that the plaintiff in error gave her his name and address, and, further, "to show that the defendant came to the bank for the purpose of advising Miss Doty that he had learned that 'Martin J. Downey' did not have an account in the First National Bank of DeKalb." It is readily apparent that this is a most indirect and awkward method of showing innocence. If there were

such a person as Martin J. Downey, and if he had composed the check in question and given it to the plaintiff in error, there surely was available some proof of a direct nature and not of a self-serving character. We are of the opinion that it was not error for the court to sustain the prosecution's objection to that line of questioning. Self-serving conversations between the defendant and third parties subsequent to the commission of the crime are not competent evidence. *People* v. *McLaughlin,* 337 Ill. 259, at page 262; *People* v. *Meyer,* 289 Ill. 184; *People* v. *Jurek,* 357 Ill. 626.

The plaintiff in error, in his brief, places much emphasis upon his claim that the prosecution failed to prove one of the essential ingredients in the charge made against him, namely, that "Martin J. Downey was a fictitious character." It is asserted on his behalf that, independent of his admission that Downey was "dreamed up," there was no valid proof that the maker of the check in question was nonexistent. We do not disagree with the contention that the State cannot rely upon a confession of a defendant to establish the *corpus delicti.* It is claimed that the proof adduced on this subject at the trial was entirely of a negative character and was incompetent and insufficient to establish that essential element of the crime charged.

The record discloses that two witnesses from the bank testified that the alleged maker of the check had no account in the payee bank, and that there never was an account in the name of the maker in the bank in question. Another witness testified that he had checked the telephone directories of both the cities of Sycamore and De Kalb and the names of the subscribers of the public utility companies, and failed to find the name of "Martin J. Downey;" also, that he had never heard of, and did not know of, a person named "Martin J. Downey." If such proof is not adequate then the prosecution is faced with dire futility in an effort to obtain a conviction for a violation of the section of the Criminal Code involved herein. The leading text authorities

and many States have had occasion to consider and to approve negative proof to establish the nonexistence of a fictitious individual, for the very cogent reason that such proof can be made in no other way. In 9 A.L.R. 407, at page 414, appears a collection of authorities holding as follows: (1) That negative testimony showing that the alleged maker had no account at the payee bank was *prima facie* proof of the nonexistence of the maker. (2) That negative testimony that city directories in the community failed to disclose the existence of the alleged maker is competent evidence to prove that the alleged maker is fictitious. (3) That testimony of businessmen and long residents of a community that a particular named person was never heard of or never resided in the community was competent to establish nonexistence of such person. (4) That proof of the above facts was *prima facie* proof of the nonexistence of the maker and in the absence of the production of, or positive proof of, the actual existence of such alleged person by the defense, a conviction should be affirmed.

Wigmore on Evidence, Third ed., sec. 664, states that this sort of testimony is constantly received to prove, among other things, the nonexistence of a fictitious person. Also, in the case of *Kruidenier's Estate* v. *Bankers Trust Co.* 203 Iowa, 776, 209 N.W. 452, testimony was received to show that no such person as the payee of a particular check got mail at a local post office, that his name did not appear in the post-office directory, and that he had never been heard of in the community, and the court observed that it could perceive of no better evidence to prove that a particular individual was a fictitious and nonexistent person. Furthermore, in the case of *People* v. *Sharp*, 53 Mich. 523, 19 N.W. 168, the court allowed a sheriff to testify as to his inability to find or hear of an individual whom the State was attempting to prove nonexistent. The court in that case stated: "There is no other way to show that a name is fictitious." And in the case of *Nichols* v. *United States*,

48 Fed. 2d 46, at page 49, residents of a community were allowed to testify that they had never known the particular person, that his name was not in the city directory or telephone book, and that they were unable to learn of him by inquiry. The court, in referring to the negative nature of the testimony, stated, "But the burden of showing that no such person had lived in Lakeland could have been borne in no other way than by such proof as was offered."

The cases relied upon by plaintiff in error relative to his claim of incompetency of such proof are not applicable. They refer to negative proof often tendered in tort actions involving railroad-crossing accidents where witnesses did not hear the ringing of the bell or the sound of the whistle. This court has often had occasion to condemn such testimony as being without much probative value.

We are of the opinion, in light of the foregoing analysis, that the proof offered by the State on the nonexistence of Martin J. Downey was competent and sufficient to establish Kosearas's guilt, independent of his admission that he was guilty.

Plaintiff in error also complains of the trial court's ruling in permitting the assistant State's Attorney and first deputy sheriff to testify. To support his claim of error in this regard, he finds comfort in the line of cases wherein the court has on many occasions criticized the action of an attorney who performs in the role of a witness as well as that of trial counsel. Needless to say, both the assistant State's Attorney and the sheriff were interested on the prosecution side, but the jury was properly instructed on the subject that it was permitted to consider such interest in evaluating their testimony.

The record indicates very clearly the guilt of the defendant. We find no prejudicial error committed at his trial.

*Judgment affirmed.*