(No. 36226)
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* WALTER JONES, Plaintiff in Error.

*Opinion filed November 30, 1962.*

HUBERT J. LOFTUS, of Addison, appointed by the court, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys General, and RUDOLPH L. JANEGA and MARVIN E. ASPEN, Assistant State's Attorneys, of counsel,) for the People.

Mr. CHIEF JUSTICE SOLFISBURG delivered the opinion of the court:

The defendant, Walter Jones, was indicted in the criminal court of Cook County on a charge of rape. He pleaded not guilty, was tried before a jury, found guilty, and sentenced to the penitentiary for a term of 30 years.

Defendant now brings writ of error, contending that he was not proved guilty beyond a reasonable doubt, and, further, that oral statements he made to the arresting officer at the time of his arrest, and a written statement to an assistant State's Attorney the day following his arrest, should have been admitted in evidence.

Concerning his contention that he was not proved guilty beyond a reasonable doubt, defendant does not deny that he engaged in an act of sexual intercourse with the prosecuting witness, but he argues that she was soliciting,

and in order to forestall prosecution on a charge of prostitution, she proclaimed that she had been raped.

The defendant and one Brown met the complaining witness somewhere in the vicinity of 15th Street and Douglas Boulevard in the city of Chicago on October 27, 1958, at about 8:45 P.M. The prosecutrix testified that she met the defendant across the street from the alley where the act took place; while the defendant testified that he met her several blocks from that alley. The three persons entered an alley, going to a place where there was a mat spread. Both men had intercourse with her. She testified it was forcibly and against her will; the defendant testified it was for pay.

The prosecuting witness, a married woman employed as a nurse's aid, testified that she was returning from a visit to a friend's home and that the defendant and his accomplice each seized her by an arm, that she screamed, and that the defendant held a knife against her throat and threatened to use the knife if she resisted or made further outcry. The two men took her into an alley. They passed a man fixing a car, but she was warned against making an outcry. She made no outcry at that time, but at knife's point she was forced to remove her shoes and lie down and both men had intercourse with her. As she came out of the alley, she saw police officers and reported the rape to them. She further stated that the rape occurred during her menstrual period. Police officer Miller testified that they could hear her before they saw her. She was bare-footed, carrying her shoes, and sobbing as they saw her come out of the alley. Her clothes were dishevelled as though she had been scuffling. Police officer Lappe said that when he saw her at the police station she was covered with dirt, like dust, and had a scratch on her neck. He also testified that the front of the defendant's trousers were wet and that he had a blood stain on his underwear.

Officer Miller further testified that the police went to the

area in response to a radio signal and the defendant was still hiding in the areaway where the act had taken place. The defendant had upon his person a straight knife and the prosecuting witness's purse.

The defendant, in testifying, admitted that he had intercourse with the complaining witness, but alleged that he paid her $6. At the time of his arrest, he asked the police officer to search within the prosecuting witness's brassiere for the $6 which he claims to have paid her, but the officer refused to do so. Defendant stated further that at no time did he have a knife in his hands or on the complaining witness's neck, but admitted that he had a knife in his pocket and also had her purse in his right-hand pocket. He also said that she did not yell or scream and did not resist in any manner; she did not have a cut on her neck and her clothes were not dirty. He explained her purse being in his pocket by stating that she gave him the purse to hold while she engaged in intercourse with Brown.

We have examined the record in this case having in mind that we have the duty to examine the evidence in rape cases carefully, as there must be sufficient evidence to show that the act was committed by force and against the will of the female. We are of the opinion that the defendant was proved guilty beyond a reasonable doubt. The jury determined the credibility of the witnesses and apparently believed the testimony of the prosecuting witness and the police officers rather than the defendant. When she was first seen by the police, she was in a "tearful state, frightened and her clothes were dismantled, as though she had been scuffled with" according to the testimony of officer Miller. There is further testimony that she had a bloody cut on her neck and that her clothes were dirty. Although we do not know who called the police, apparently some sort of disturbance was reported in the alley to cause the police to respond to a call to go to the area. All of this testimony is in corroboration of the complaining witness's testimony

that the act was by force and against her will. Furthermore, it is questionable whether a married and employed woman would submit to two acts of intercourse for pay during her menstrual period. Defendant's explanation for having prosecutrix's purse on his person at the time he was arrested, while hiding, apparently did not impress the jury.

It is also the defendant's contention that he should have had the right to cross-examine the police officer concerning his, the defendant's, conversation with the police officer at the time of the arrest. It appears that on cross-examination of the police officer Miller, who arrested the defendant, the defense counsel asked "what did the defendant Jones say?" The court sustained an objection by the assistant State's Attorney. It is apparent that defense counsel was trying to get the officer to admit that the defendant had asked him to search the prosecuting witness for the $6 which defendant allegedly paid her to perform an act of prostitution. Although there was nothing in officer Miller's direct examination concerning any conversation with the defendant at the time of arrest, the court should have allowed the defense counsel a wider latitude in cross-examination. However, the defendant's counsel by persistence did secure an answer from the witness that no such conversation occurred. We do not see how the defendant was prejudiced by the court's sustaining the objection noted herein as he subsequently received the answer to the question from officer Miller.

The final contention of the defendant is that a written statement to an assistant State's Attorney the day following his arrest should have been admitted in evidence. His statement was made in the presence of the prosecuting witness and one of the police officers involved. In this statement the defendant gave his version of the occurrence, and although he freely stated that he had intercourse with the complaining witness, he denied the use of force. The assistant State's Attorney did not seek to introduce this statement. Defense counsel offered it in evidence, and the court at first received

it in evidence, but subsequently in chambers sustained an objection to the introduction of the statement and reversed his ruling admitting it in evidence.

Everything that the defendant wished to place in evidence by the written statment was presented to the jury on his direct testimony. At best, the statement was a self-serving statement, and this court has held that self-serving conversations between the defendant and third parties subsequent to the commission of the crime are not comptent evidence. (*People* v. *Kosearas,* 410 Ill. 456; *People* v. *Colgrove,* 342 Ill. 430.) Although the defendant contends that the written statement was a part of *res gestae,* it is clear that the statement was made the day following the defendant's arrest. We, therefore, feel it cannot meet the test of *res gestae,* which requires a statement to be the natural and spontanous utterance of the declarant so closely connected with the transaction in question as to be in effect a part of it, without opportunity for premeditation or design. *People* v. *Borella,* 312 Ill. 34, 45.

The record discloses that the defendant was guilty of the crime of rape beyond a reasonable doubt and that he was not prejudiced by the rulings of the trial court as to the statements in question. Accordingly the conviction and judgment of the criminal court of Cook County will be affirmed.

*Judgment affirmed.*