(No. 36865.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* DAVID MANN, Plaintiff in Error.

*Opinion filed February 1, 1963.—Rehearing denied March 27, 1963.*

HOWARD T. SAVAGE, of Chicago, appointed by the court, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys General, and RUDOLPH L. JANEGA and DEAN H. BILTON, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE DAILY delivered the opinion of the court:

At a bench trial in the criminal court of Cook County, David Mann, defendant, was convicted of unlawfully sell-

ing narcotic drugs and was sentenced to the penitentiary for a term of not less than 10 nor more than 25 years. Upon writ of error he contends that he was not proved guilty of the crime charged and that improper evidence was presented by the People both at time of trial and upon hearing in aggravation or mitigation.

The record indicates that about noon on August 17, 1960, Joseph M. Arpaio, a United States Treasury agent, met one Thomas Durkin at the northwest corner of Carroll and Damen streets in Chicago and there entered an automobile occupied by the latter. After a brief conversation, Arpaio gave Durkin $100 in currency and then watched as Durkin left the vehicle and walked to the east side of Damen Street where defendant was waiting. According to Arpaio, there was an exchange of hands between the men after which Durkin returned across the street to his automobile and handed Arpaio a small package that he carried clenched in his hand. Upon opening the package it was found to contain a white powder which by later analysis proved to be mixture of heroin and dormin, the latter being a non-narcotic substance.

Donald Schnettler, another Treasury agent, testified that, while standing at the southeast corner of Carroll and Damen streets, he observed the meeting of Durkin and defendant, witnessed their exchange of hands which resembled a handshake, and then saw Durkin walk back across the street to where Arpaio was waiting.

James J. Riordan, a Chicago police lieutenant, was parked a short distance from the meeting place, and as defendant left in his automobile, Riordan followed him to a Madison Street address but made no arrest until August 22 1960, at which time, according to the witness, defendant admitted the meeting with Durkin but contended the substance delivered by him was only dormin.

Louis Garippo, an assistant State's Attorney, also testified that during a conversation following the arrest, defend-

ant admitted that Durkin had called him on the morning of August 17 and told him "somebody from up north wanted to cop some stuff," that he met Durkin later the same day near the corner of Carroll and Damen streets and received from him $100, but that the package which he then delivered to Durkin contained only dormin. No evidence whatsoever was offered upon behalf of the defendant.

The defendant contends that the evidence, at most, shows only a sale of narcotics to Durkin and not to Arpaio as charged in the indictment. With this we cannot agree. Although there was no proof that defendant knew the actual identity of the ultimate recipient, there was evidence that Durkin had informed him prior to their meeting that the narcotics were being purchased by "somebody from up north." As we recently pointed out in *People* v. *Alexander,* 21 Ill.2d 347, if the supplier knows the narcotics are being purchased upon behalf of a third person, he may be charged with the sale to such third person irrespective of whether he had actual contact with or other knowledge of the ultimate receiver. There was, therefore, sufficient evidence to support the conviction of an illegal sale to Arpaio.

Contrary to defendant's assertion, there was also ample proof that the package delivered by Durkin to Arpaio had been received from defendant. The meeting between Durkin and defendant occurred in full view of two Treasury agents; both agents testified concerning this meeting and the "exchange of hands;" they also stated that Durkin immediately returned across the street to where Arpaio was waiting; Arpaio specifically testified that, in returning from the meeting with defendant, Durkin at all times kept the package clenched in his hand and in view; and according to the police lieutenant and the assistant State's Attorney, defendant himself admitted delivering the package to Durkin but disputed only its contents.

Defendant also questions the propriety of an assistant State's Attorney testifying in a criminal case. Although the

witness's connection with the prosecutor should be borne in mind when assessing his credibility, this fact alone does not render him incompetent (*People* v. *Kosearas,* 410 Ill. 456,) particularly where, as here, the witness took no part in the conduct of the trial. The question of credibility is better decided by the trier of fact, (*People* v. *Palumbo,* 5 Ill.2d 409,) and we cannot say that the uncontradicted testimony, was accorded unreasonable weight by the lower court.

Upon the hearing in aggravation or mitigation, the court was informed of defendant's prior convictions of grand larceny, petty larceny, and confidence game, after which Louis Garippo, the assistant State's Attorney, testified that defendant told him of other instances after August 17, 1960, in which he had dealings with Durkin. On cross-examination, in answer to defense counsel's question, Garippo stated that Durkin and another individual by the name of Foley had given statements admitting the purchase of narcotics from defendant on August 22, 1960. Defendant now claims error by reason of this testimony.

In determining the degree of punishment to be inflicted, the court is not bound by the usual rules of evidence found in criminal prosecutions but may search anywhere within reasonable bounds for other facts which tend to aggravate or mitigate the offense, including the moral character of the defendant, his habits, social environment, and motivations. (*People* v. *Faulkner,* 12 Ill.2d 176; *People* v. *Seger,* 405 Ill. 222; *People* v. *McWilliams,* 348 Ill. 333.) The instant proof was calculated to serve these ends, and although the statements of Durkin and Foley were hearsay in nature, having been elicited by defense counsel upon cross-examination, they cannot now serve as a basis for error. Accordingly, the judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*