**Crispin GONZALEZ, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 57225.**

Court of Criminal Appeals of Texas, Panel No. 3.

Sept. 26, 1979.

Leo Villarreal, Kingsville, for appellant.

William B. Mobley, Jr., Dist. Atty., and Eric G. Brown, Asst. Dist. Atty., Corpus Christi, Robert Huttash, State's Atty., Austin, for the State.

Before DALLY, W. C. DAVIS and CLINTON, JJ.

## OPINION

CLINTON, Judge.

Appellant was charged by indictment that in the county and on the date alleged he did "then and there knowingly and intentionally deliver to I. C. Galvan a controlled substance," to-wit: heroin. The charge of the Court in applying the law to the facts instructed the jury to find appellant guilty if it found that he "did intentionally or knowingly deliver a controlled substance, to-wit: heroin, to I. C. Galvan, as alleged in the indictment . . ." The verdict of the jury found appellant "guilty of the offense of knowingly and intentionally delivering a controlled substance . . to-wit: heroin, as charged in the indictment." Two prior offenses having been alleged and found by the Court to be true,

punishment as an habitual criminal was assessed at life imprisonment and, after motion for new trial was heard and overruled, sentence was imposed.

Upon appeal, appellant presents a single ground of error that contends that testimony from laboratory records and an exhibit purporting to report results of a laboratory analysis of a submitted substance were inadmissible. However, we find unassigned error which should be reviewed in the interest of justice that is dispositive of the appeal and, accordingly, do not directly address the ground of error that is advanced.[1]

In *Scott v. State*, 534 S.W.2d 711 (Tex.Cr.App.1976) this Court considered in the interest of justice sufficiency of evidence with regard to burden of proof imposed on the State to show that the prosecution in that cause was not barred by the relevant statutes of limitation, finding propriety of doing so as follows:

"In *Barbee v. State*, Tex.Cr.App., 432 S.W.2d 78, 81, cert. denied, 395 U.S. 924, 89 S.Ct. 1779, 23 L.Ed.2d 241 (1969), this Court stated:

'While this Court does not ordinarily consider the question of sufficiency of the evidence to support a conviction as unassigned error under Sec. 13 of Art. 40.09, supra, we will do so, in view of appellant's claim that . . . there was *no* evidence [upon one of the essential elements of the State's burden of proof].'" (Emphasis in original)

Here, it is readily apparent that the State presented no evidence whatsoever in sup-

---

1. The exhibit complained of is the form routinely used by the Texas Department of Public Safety entitled, "Controlled Substances Submission and Report." When completed, it reflects information contributed by the submitting officer and what purports to be result of analysis of the material submitted. The combined form thus presents both submission information that was ruled inadmissible and an analysis report that was held admissible in *Coulter v. State*, 494 S.W.2d 876 (Tex.Cr.App. 1973); and unlike the situation in *Williams v. State*, 508 S.W.2d 83 (Tex.Cr.App.1974) our appellant here vigorously and vociferously objected to testimony from the supervisor of the laboratory as to what transpired after another

chemist in the laboratory received the submission form and the material covered by it as well as to the combined form itself when offered in evidence.

Because we reverse the judgment on fundamental error we do not further examine whether the exhibit at issue has "the indispensable fundamental trustworthiness necessary for its admission into evidence," *Coulter*, supra, 494 S.W.2d at 884, but merely observe that the "submission" portion of the report, being similar to Exhibit No. 2 in *Coulter*, was probably not admissible, and insofar as the verdict finds the submitted substance to be heroin on a basis of laboratory analysis, it rests solely on the "report" portion of the exhibit.

port of its allegation in the indictment that appellant did "knowingly and intentionally deliver to I. C. Galvin" heroin.[2]

Rather, the testimony of Galvan himself leaves no doubt that the delivery he observed by a person Galvan identified as appellant[3] was made to one Montoya who accompanied Galvan to the premises where the transaction occurred. Specifically, Galvan testified that after they arrived at the premises in his automobile he gave Montoya money to purchase heroin and remained in his car while he observed Montoya "walked up to the front door, knocked on it, and the defendant at this time opened the door and stood there in the doorway" and after talking to Montoya briefly "defendant went back inside the house, left the door open, and Montoya stood outside the doorway. He went back inside and was gone about four minutes, probably at the most, he came back, handed Montoya—he handed him something that I could see. Montoya handed him the money that I had given him, and the defendant walked back inside the door. Montoya walked toward me" and after he got in the car still occupied by Galvan, Montaya "handed me the small tin foil packet."

2. After the State rested its case, appellant moved for an instructed verdict of acquittal, pointing out to the trial court essence of allegations in the indictment and then urging that there was "nothing in the State's case . . . that Mr. Gonzalez delivered anything, transacted anything with Mr. I. C. Galvan" and that the testimony showed that "Mr. Montoya gave some of the foils to I. C. Galvan." The motion was denied by the trial court without explanation. In his motion for new trial, appellant restated the assertions. Shortly after the record was completed appellant terminated employment of his trial counsel and employed other counsel to represent him on appeal. In these circumstances, that the point upon which we write and reverse was clearly called to the attention of the trial court, albeit not raised here by appellate counsel, facilitates our review of the issue in the interest of justice.

3. Defense advanced by appellant at trial was one of alibi which, in effect, in effect, contested identification testimony of Galvan. Since the jury obviously rejected that defense, we assume that the delivery witnessed by Galvan was made by appellant.

4. "The court instructed the jury on the law of principals. The evidence was sufficient to sus-

Further, to a particularized question, Galvan conceded:

"Q: Did he hand it over to you, Officer, or to Montoya? Would you answer my question, please sir? Did he hand it over to you?

A: No, sir, not directly to me."

In similar circumstances this Court has held evidence sufficient to sustain a conviction of one for delivering a controlled substance to the person named in the indictment where the jury was instructed on the law of principals. *Miller v. State.*[4] But here, unlike *Miller* the Court did not charge on the law of parties and, unlike *Saddler,* the evidence does not support a conclusion that Montoya and appellant were acting together in the observed transaction.

The State argued to the jury a theory of "constructive delivery" by appellant through Montoya to Galvan, illustrating the contention by analogizing from an experience commonly occurring among spectators at athletic events—a customer in the middle of a section obtaining a bag of popcorn from a vendor on the aisle.[5] But we think

tain the conviction of appellant for delivering LSD to Armand. *Saddler v. State,* 167 Tex. Cr.R. 309, 320 S.W.2d 146 (1959)." *Miller v. State,* 537 S.W.2d 725, 726 (Tex.Cr.App.1976).

5. As it appears in the record (S.F. 318–319):
"This is a buying and selling situation. Again keep in mind by the term delivery here means the actual or constructed transfer from one person to another, the money went to this man's pocket. The heroin came from this man's hand and went into an undercover agent's hand. * * * We have a buyer and selling is exactly what it's like when you talk about actual and constructive delivery. I'll give you one and example: At a football game when a vender comes up the stairs with popcorn and the man on the end wants to buy a bag of popcorn, the vender down on this end gives it to this person and she gives it to the next and on and on in turn until it gets down to the end. The popcorn is passed from here to here to here until it eventually gets down to the buyer. It may go through some other hands, but this is the buyer and this is the seller. So it doesn't make any difference if it went through Montoya that's still constructive delivery. It is constructive delivery of that popcorn although the vender would hand it to this person by the

that even if the popcorn analogy is correct still it is not applicable to the facts of this case.

Section 1.02(8) of the Controlled Substances Act, Article 4476–15, V.A.C.S., defines "deliver" or "delivery" as "the actual or constructive transfer from one person to another of a controlled substance . . ." Here in our case, there were two actual transfers, one from appellant to Montoya and the second from Montoya to Galvan. The question is whether two such actual transfers, without more, constitute a constructive transfer from appellant to Galvan. We think not.

In holding that accommodation agency was no longer a defense in prosecution for sales under the now repealed Uniform Narcotic Drugs Act,[6] this Court found that proof of consideration was not required as an element of the offense of sale and concluded that "a transfer merely for the accommodation of a principal-purchaser does come within the definition of 'sale' applicable to the offense," thereby teaching, as applicable to the facts of this case, that when Montoya handed the packet to Galvan he engaged in an actual transfer of what turned out to be heroin and, accordingly, "delivered" it within the meaning of Sec. 1.02(8) of the Controlled Substances Act in which the element of consideration is pointedly omitted. See also *Holdaway v. State*, 505 S.W.2d 262, 264 (Tex.Cr.App.1974).[7]

But the question still remains whether passage of possession of the packet from appellant through Montoya to Galvan amounted to a "constructive transfer" from appellant to Galvan. In answering this question we are unaided, so far as our research reveals, by any earlier decision of the Court construing applicable provisions of the Controlled Substances Act. We can be

certain the offense of delivery of a controlled substance is not concerned with concepts of "title" in the usual sense and yet be just as certain that a "transfer" as an essential element of "delivery" contemplates that the transferor is at least aware of the existence of an ultimate transferee before he may be said to have delivered or made a delivery of a controlled substance to another through a third person. The precise point was made in *People v. Alexander*, 21 Ill.2d 347, 172 N.E.2d 785 (1961) when the Court pointed out and held:

"However, the evidence is also clear that Dayle (an undercover federal agent) had given Handsborough (a conduit) the money to buy narcotics for him and both of the defendants knew that Handsborough was buying the narcotics for someone else. Therefore . . . there was sufficient evidence to show a conspiracy to sell narcotics and a sale of narcotics by the defendants to Dayle, and the fact that the sale was made through Handsborough is immaterial."

Alexander was translated by *People v. Mann*, 27 Ill.2d 135, 188 N.E.2d 665, 667 (1963) into a rule that "if the supplier knows the narcotics are being purchased upon behalf of a third person, he may be charged with the sale to such third person irrespective of whether he had actual contact with or other knowledge of the ultimate receiver." The *Mann* case was decided in a fact situation very similar to the instant case except that the conduit in *Mann* told the seller that heroin was being bought by "somebody from up North." In the case before us there is no evidence whatsoever of the content of conversations between Montoya and appellant or any other suggestion in the record that appellant knew that heroin was being purchased by

aisle. The defendant would have you believe that it's delivery to this person alone, but it's not. That popcorn it's not that person, the heroin goes on down the line until it gets back to the buyer. Now, the buyer now has his popcorn and the seller now has his money. That is what we mean by constructive delivery."

6. Article 725b, V.A.P.C., repealed by Texas Controlled Substances Act, Article 4476–15, V.A.C.S.

7. "A 'sale' occurred within the meaning of the statute when appellant 'handed' the morphine tablet in question to Agent Raef. Moreover, even if appellant had not received the $5.00 in question as payment for the morphine, proof would be sufficient."

Montoya on behalf of a third person. Thus, without allegation and evidence to support it that Montoya was acting with appellant in some fashion as suggested in, e. g., *Hammonds v. State*, 166 Tex.Cr.R. 499, 316 S.W.2d 423, 425 (1958) so as to be responsible for the conduct of Montoya there is simply no proof that appellant delivered heroin to Galvan, as alleged in the indictment.

The judgment of conviction is set aside and in view of insufficiency of the evidence to support a finding of guilt, this Court is required by the mandate of the Supreme Court of the United States in *Burks v. U. S.*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978) and *Greene v. Massey*, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978) to reform the judgment to show an acquittal.

It is so ordered.

DALLY, Judge, concurring.

The facts concerning the transaction are as stated in the majority opinion. The evidence simply does not show that the appellant *knowingly* made a delivery of heroin to Galvan. There is nothing in the record to show that the appellant *knew* that he was making a transfer of the heroin, either actual or constructive, to Galvan. There is no evidence that the appellant had ever met Galvan or that he knew about Galvan's role in the sale. The testimony of Galvan would have supported a conviction of the appellant either for possession of heroin or for the delivery of heroin to Montoya; but the appellant was not charged with these offenses.

In my opinion, based on the facts presented here, the evidence did not raise an issue of appellant's culpability through the law of parties. An instruction on this subject would not have saved this conviction.[1] Therefore the discussion of the law of parties, principles, and accommodation agency is wholly unnecessary to the decision.

I concur in the reversal of the judgment.

W. C. DAVIS, J., concurs in this opinion.

---

1. The facts in *Saddler v. State*, 167 Tex.Cr.R. 309, 320 S.W.2d 146 (1959), presented a clear case for proper application of the law of principals. In *Saddler*, the undercover officer made a deal directly with the defendant to buy marihuana and the defendant later dispatched an intermediary to arrange delivery. The Court in *Miller v. State*, 537 S.W.2d 725 (Tex.Cr.App. 1976) gave a brief factual account that appeared to make that case very similar to this one. However, the *Miller* court concluded that with an instruction on the law of principals the evidence was sufficient, citing *Saddler*. That conclusion, and the citation to *Saddler*, are inexplicable unless we assume that the record in *Miller* contained facts which raised the principles issue and made the case analogous to *Saddler*, but those facts were not mentioned in the *Miller* opinion's cursory factual recitation.