David Allen WALLIS, Appellant,

v.

The STATE of Texas, Appellee.

No. 09–90–233 CR.

Court of Appeals of Texas,
Beaumont.

April 22, 1992.

Willis Everett Smith, Kingwood, for appellant.

Peter C. Speers, Dist. Atty., Conroe, Kathleen Hamilton, Asst. Dist. Atty., Conroe, for State.

Before WALKER, C.J., and BROOKSHIRE and BURGESS, JJ.

## OPINION

WALKER, Chief Justice.

This is an appeal from a conviction for the first degree felony offense of Delivery of a Controlled Substance (cocaine). Appellant's indictment contained three enhancement allegations raising appellant's punishment status to that of an habitual offender. Following the verdict of "guilty," the jury

assessed appellant's punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice for a term of sixty-five (65) years. Appellant raises two points of error for consideration on appeal, *viz:*

Point of Error One: The appellant was not in direct or indirect control of a controlled substance before its delivery to an undercover police officer.

Point of Error Two: The trial court erred in allowing the State to admit, over the defendant's objection, evidence of an extraneous uncharged threat allegation.

Despite the ambiguous nature of the wording of appellant's first point of error in the context of criminal appellate law, appellant's brief centers on a single argument. Appellant complains that the evidence is insufficient to prove beyond a reasonable doubt that appellant "delivered" contraband as alleged in the indictment and the jury instructions. Relying heavily on language taken from *Rasmussen v. State,* 608 S.W.2d 205 (Tex.Crim.App.1980), appellant argues that, under *Rasmussen's* definition of "constructive transfer," the evidence in the instant case failed to show that appellant had "direct or indirect control over the conduct of Charles Gingo (sic), who made the ultimate transfer." Appellant further argues that there is no evidence to show an agency relationship or any control by appellant over Charles Gengo's conduct of disposing of the contraband in appellant's absence or by appellant's direction.

At this point, a brief rendition of the facts presented to the jury in the light most favorable to the verdict is in order. Appellant was indicted under the instant facts along with two brothers, Chad Gengo and Charles Gengo, for delivery of cocaine to an undercover police officer, David Womack. Among the witnesses called by the State in its case-in-chief were both Chad and Charles, as well as David Womack. The jury was made fully aware of the fact that both Chad and Charles were giving testimony under a cloud of further prosecution if their testimony was anything but truthful and consistent with previous statements.

Combining the testimony of Chad, Charles, and Officer Womack, it appears that on the night of February 23, 1990, in the parking lot of a local nightclub in Montgomery County, Chad sold some marihuana to Officer Womack, who was working in an undercover capacity. Womack asked Chad if Chad could sell Womack some cocaine. Chad did not answer immediately, but walked over to where appellant was standing. Womack positively identified appellant as the person Chad conversed with. Chad then returned to Womack and instructed Womack to go to appellant's apartment later and that appellant would sell Womack the cocaine.

At some later point in time, appellant personally delivered approximately one-half gram of cocaine to the apartment of Charles Gengo. Chad Gengo also lived at the apartment with his brother and Charles' girlfriend. Appellant personally handed the cocaine to Chad instructing Chad that "this is for them dudes that come over to his (appellant's) house and this is what they wanted."

Womack testified that he (Womack) showed up at appellant's apartment and specifically asked appellant if he (appellant) had Womack's one-half gram of cocaine. Appellant replied that he (appellant) had dropped the cocaine off at Chad's apartment. Womack immediately went to Chad's apartment. Chad Gengo was not at the apartment, but Charles Gengo was. Womack explained that he (Womack) was there to pick up something that "David" (appellant) had left at the apartment. Charles telephoned Chad who spoke directly to Womack. Chad instructed Womack that the cocaine was located in Chad's bedroom on a nightstand underneath an ashtray. Charles Gengo led Womack to Chad's bedroom. When Charles lifted the ashtray on the nightstand, the baggie of cocaine was underneath and Womack took possession of it. During the telephone conversation with Chad, the price of the cocaine was determined to be $50. The mon-

ey was left at the apartment, and Womack left the apartment.

As has been often stated, the standard for reviewing sufficiency of evidence to support a conviction is, when viewing said evidence in the light most favorable to the verdict, any rational trier of fact could have found proof of each element of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Furthermore, any review of the sufficiency of the evidence must be measured against the jury instructions, specifically the application paragraphs. *See, Walker v. State,* 823 S.W.2d 247 (Tex.Crim.App.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1481, 117 L.Ed.2d 624 (1992); *Jones v. State,* 815 S.W.2d 667 (Tex.Crim.App.1991).

In the instant case, the jury was specifically instructed that conviction of appellant could take place under one of three delivery scenarios: 1) that appellant constructively transferred the contraband to Womack, 2) that Chad Gengo constructively transferred the contraband to Womack with appellant culpable as a party "acting with intent to promote or assist the commission of the offense, if any, by soliciting, encouraging, directing, aiding or attempting to aid" Chad Gengo in the constructive transfer to Womack, or 3) that Charles Gengo actually transferred the contraband to Womack with appellant culpable as a party "acting with intent to promote, or assist the commission of the offense, if any, by soliciting, encouraging, directing, aiding or attempting to aid" Charles Gengo in the actual transfer to Womack. *See,* Tex.Penal Code Ann. §§ 7.01 and 7.02 (Vernon 1974).

In *Daniels v. State,* 754 S.W.2d 214, 220–221 (Tex.Crim.App.1988), the Court of Criminal Appeals narrowed the applicability of the *Rasmussen* case by stating the following:

> The *Rasmussen* Court then simply stated:
>> "The common element of these cases is that prior to delivery the substance

involved was directly or indirectly under the defendant's control."

It applied that "common element" to Rasmussen and found that his actions did not constitute constructive delivery so as to make him a primary party to the offense.

The *Rasmussen* Court did not, repeat, did not adopt the definition of "constructive transfer" as set out in *Ellis,*[1] although later cases seem to be confused on this point. (footnote omitted) All it did was to glean a common element from the out-of-state cases mentioned in the opinion.

The Court of Criminal Appeals has basically set out a two pronged analysis of constructive transfer cases. In *Davila v. State,* 664 S.W.2d 722, 724 (Tex.Crim.App. 1984), the Court stated:

> We followed other jurisdictions and interpreted a constructive transfer to be the transfer of a controlled substance either belonging to the defendant or under his direct or indirect control, by some other person or manner at the instance or direction of the defendant. . . .

In *Gonzalez v. State,* 588 S.W.2d 574, 577 (Tex.Crim.App.1979), the Court held that constructive transfer requires the transferor at least be aware of the existence of the ultimate transferee before delivery. The *Daniels* opinion interpreted the *Gonzalez* language as not requiring the transferor to know the identity of or be acquainted with the ultimate recipient. It only required that when the State alleges constructive transfer to an alleged ultimate recipient that the accused must have contemplated that his initial transfer would not be the final transaction in the chain of distribution. *Daniels, supra* at 221.

In the instant case, ample evidence exists to prove both of the *Davila/Gonzalez* prongs. Evidence existed that the cocaine was in the actual care, custody and control of appellant prior to appellant physically giving it to Chad Gengo. Furthermore, it is undisputed that appellant directed Chad to transfer the cocaine to Womack

---

1. *State v. Ellis,* 161 W.Va. 40, 239 S.E.2d 670   (1977).

and that appellant expected $40 for it and Chad could keep any money above that amount. Obviously from Chad's conversation with appellant, appellant fully contemplated that his initial transfer to Chad would not be the final transaction in the distribution chain as appellant expected to be paid when Womack paid Chad. The evidence is clear that appellant dealt with Womack specifically for the purchase of cocaine, directing Womack to where the cocaine could be found (specifically at the apartment of Chad and Charles Gengo); that appellant personally transferred cocaine to Chad Gengo with the intent that the cocaine be transferred to Womack for a price of at least $40; that Chad Gengo verbally instructed Womack as to where the cocaine could be located and negotiated a price with Womack; that Womack located the cocaine in the exact location where Chad had instructed it would be; and that Womack left $50 with Chad's brother, Charles, for payment for the cocaine. We find that under these facts coupled with the instructions given, any rational trier of fact could have found beyond a reasonable doubt that appellant, acting as a party with Chad Gengo, delivered the contraband to Officer Womack as alleged in the indictment. Point of error one is overruled.

■ Appellant's second point of error focuses upon the admissibility of the following testimony from State's witness, Chad Gengo:

Q. (the State) Chad, are you comfortable about having to testify today?

A. (Chad) No, ma'am. Not really.

Q. Can you tell the jury why?

Ms. Spielvogel (for appellant): Objection, Your Honor. It is not relevant and material to any issues regarding any incident that's in an allegation in this case.

The Court: Overruled.

Ms. Hale (the State): Thank you.

(By Ms. Hale:)

Q. Tell the jury why you are not comfortable about being here today?

A. Because David Wallis has been threatening me. Told me that right before—

Ms. Spielvogel: Objection, Your Honor. It is not responsive.

The Court: Overruled.

The Witness: Told me last Monday when I went to visit my mom in the visitation that I better enjoy my life because everybody in Montgomery County jail knows about this, this case.

(By Ms. Hale:)

Q. So, is he angry about you pleading guilty or testifying, or what is he mad about you?

A. Angry about me testifying that he gave me the cocaine.

Q. Has he ever had any conversations with you about what he wants you to say today?

A. Yes, ma'am.

Q. What did he tell you he wanted you to say?

A. Say it was somebody else.

Q. Was it somebody else?

A. No, ma'am.

Further direct testimony of Chad Gengo along this same line included the following:

Q. (the State) Are you scared of this man down here?

A. (Chad) A little bit.

Q. Well, if you're not scared of him why did you ask me to put you in protective custody?

A. Well, I guess I am scared of him.

Q. Did he ever tell you he was going to have somebody break a broom handle off and stab you with it?

A. Yes.

Appellant's complaint on appeal is that this testimony from Chad was not relevant, but if relevant, then its prejudicial value clearly outweighed its probative nature. *See,* Tex.R.Crim.Evid. 401–404. A very similar situation was analyzed in great detail in *Torres v. State,* 794 S.W.2d 596, 598–600 (Tex.App.—Austin 1990, no pet.).

In treatise-like fashion, former presiding judge of the Court of Criminal Appeals, John F. Onion, Jr., discussed in *Torres* the rationale behind admitting such testimony. Citing 2 R. Ray, Law of Evidence § 1538, at 242 (Texas Practice 1980 & Supp.1991), *Torres* provides the following:

A "consciousness of guilt" is perhaps one of the strongest kinds of evidence of guilt. It is consequently a well accepted principle that any conduct on the part of a person accused of a crime subsequent to its commission, which indicates a "consciousness of guilt" may be received as a circumstance tending to prove that he committed the act with which he is charged.

The *Torres* court continued the analysis as follows:

> Attempts by a party to suppress or fabricate evidence have been held admissible against a witness. *Johnson v. State*, 583 S.W.2d 399, 409 (Tex.Crim. App.1979); ... *see also Garza v. State*, 172 Tex.Crim. 468, 358 S.W.2d 622, 623 (1962) (efforts of an accused to induce a witness to testify falsely may be shown as indicating a consciousness of guilt); *Richard v. State*, 97 Tex.Crim. 448, 261 S.W. 587 (1924) (proof that the accused threatened or attempted to intimidate a State's witness is admissible); ....

Furthermore, in rejecting an argument by the accused that TEX.R.CRIM.EVID. 404(b) does not specifically list "consciousness of guilt" as admissible for "other purposes," the *Torres* court stated that the "other purposes" listed in Rule 404(b) are not exhaustive or exclusive, citing *Banda v. State*, 768 S.W.2d 294, 296 (Tex.Crim.App.), *cert. denied*, 493 U.S. 923, 110 S.Ct. 291, 107 L.Ed.2d 270 (1989). We find, therefore, that Chad Gengo's testimony was relevant and the trial court did not abuse its discretion in admitting the testimony over appellant's relevancy objection.

■ In response to appellant's complaint on appeal that the prejudicial nature of the testimony outweighed its probative value, we find that under the provisions of TEX. R.CRIM.EVID. 103(a)(1), and TEX.R.APP.P. 52(a) this point was not preserved for appellate purposes because the objection at trial did not state specific grounds for the ruling which appellant desired the trial court to make. The specific grounds are not apparent from the context, and it is unclear from the record before us what ruling was made by the trial court on appellant's objection.

The record before us reflects that a brief hearing out of the jury's presence was conducted regarding the extraneous misconduct testimony of Chad Gengo. The following colloquy took place immediately after the jury was removed from the courtroom:

> Ms. Hale (the State): Your Honor, I'll go into all of it if you feel that I need to. What I anticipate will be an extraneous offense from this particular witness is the threats that this defendant has made to him regarding his testimony today, which I feel is relevant, obviously, to his guilt, when he is threatening witnesses and telling them what he wants them to say as far as their testimony is concerned.
>
> Ms. Spielvogel (for appellant): Judge, we couldn't say whether or not this incident happened or not. This is simply to inflame and anger the jury, prejudice the jury. And there is no possible way this information can lead the jury to believe any communication, whether it did or did not happen, any communications as to why it was being said and it doesn't relate to this incident whatsoever.
>
> The Court: Overrule the objection.

At this point the jury returned to the courtroom and Chad Gengo was permitted to relate the alleged threatening incident to the jury. No further objection to this line of testimony was made by appellant except on grounds of relevancy, materiality, and non-responsiveness. However appellant's counsel's response as set out above may be characterized, we find that it is not specific enough to raise a TEX.R.CRIM.EVID. 403 issue before the trial court or preserve it for appellate purposes. Furthermore, counsel's response appears to contain two general complaints with the trial court responding in a general overruling of the "objection." Appellant's counsel did not request a more specific ruling from the trial court, nor did counsel clarify, crystalize, or attempt to segregate the complaints for the trial court. It is not clear to the Court that appellant objected under the

guidelines of *Montgomery v. State,* 810 S.W.2d 372 (Tex.Crim.App.1991) (opinion on rehearing) for Rule 403 purposes so that it was understood by all participants at trial to be for those specific purposes. It could have reasonably been understood to have meant something else. *See Lankston v. State,* 827 S.W.2d 907 (Tex.Crim.App.1992). Any complaint grounded in Rule 403 has been waived for appellate review by appellant. *See, Turner v. State,* 805 S.W.2d 423, 431–32 (Tex.Crim.App.), *cert. denied,* — U.S. —, 112 S.Ct. 202, 116 L.Ed.2d 162 (1991). Point of error two is overruled, and the judgment and sentence of the trial court is affirmed.

AFFIRMED.