**Albert John MIHNOVICH, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**Nos. 09–08–00207–CR, 09–08–00208–CR, 09–08–00209–CR.**

Court of Appeals of Texas, Beaumont.

Submitted Oct. 5, 2009.

Decided Nov. 12, 2009.

Discretionary Review Refused March 24, 2010.

James F. Keegan, Bellaire, for appellant.

William Lee Hon, Dist. Atty., Joseph E. Martin, III., First Asst. Dist. Atty., Livingston, for State.

Before McKEITHEN, C.J., GAULTNEY and KREGER, JJ.

## OPINION

CHARLES KREGER, Justice.

In three separate indictments, appellant Albert John Mihnovich was charged with having delivered to "Anthony Lowrie" the controlled substances hydrocodone and alprazolam "by constructively transferring said controlled substance[s.]"[1]  *See* TEX. HEALTH & SAFETY CODE ANN. § 481.114(b), (c) (Vernon Supp. 2009).[2]  The cases were tried to a jury in a single action; the result of a pretrial motion filed by the State. *Id.* § 481.132(b) (Vernon 2003).[3]  The jury convicted Mihnovich in three causes and assessed punishment of fifteen years' confinement in the Texas Department of Criminal Justice, Correctional Institutions Division in cause number 19,506, and confinement for two years each in cause numbers 19,507 and 19,508 in a state jail facility of the Texas Department of Criminal Justice.[4]  Among the issues raised by Mihnovich in his appeal from those convictions is that the evidence at trial was legally

---

1. A single delivery of hydrocodone was alleged to have occurred on March 2, 2007, while separate deliveries of alprazolam and of hydrocodone were alleged to have taken place on March 27, 2007.

2. The relevant portions of the current version of section 481.114 contain the same language as the version in effect at the time of the offense. We will, therefore, refer to the current version of the code provision.

3. In pertinent part, section 481.132(b) reads: "A defendant may be prosecuted in a single criminal action for all offenses arising out of the same criminal episode." Under subsection (a)(2) of section 481.132, the definition of "criminal episode" includes the commission of two or more offenses in violation of the controlled substances act and the offenses are the repeated commission of the same or similar offenses.

4. A fourth cause tried along with the other three, cause number 19,505, possession of a controlled substance, ended when the trial court granted Mihnovich's motion for directed verdict at the conclusion of the State's case-in-chief.

insufficient to sustain the convictions. We reverse and render a judgment of acquittal.

## THE TRIAL

As set out in the record before us, the underlying facts are relatively simple and not in dispute. The State's indictments all charged Mihnovich with having constructively delivered the controlled substances to "Anthony Lowrie." The record indicates that at the time of the offenses, Lowrie was a detective in the narcotics division of the Polk County Sheriff's office. During late 2006 or early 2007, Detective Lowrie, with the permission of the Polk County District Attorney's office, made an agreement with Betty Schleppi, a woman with pending Polk County drug charges, to have Schleppi surreptitiously purchase narcotics from individuals who were selling them illegally. Schleppi would then turn the narcotics over to Polk County authorities who would subsequently prosecute the seller criminally. Because Mihnovich was already a person of interest to Polk County authorities with regard to the illegal sale of narcotics, and because Schleppi knew Mihnovich personally, a series of illicit purchases by Schleppi from Mihnovich was arranged and consummated.

The record indicates that only Schleppi made contact with Mihnovich, from the initial telephone calls to him setting up the time and place of the transactions, to the face-to-face meetings during which the actual exchange—money for drugs—took place. Prior to each meeting, Detective Lowrie would provide Schleppi with U.S. currency from which the serial numbers had been recorded, and Schleppi would be outfitted with a wireless transmitter so that Detective Lowrie could monitor and record the entire conversation between Schleppi and Mihnovich. The March 2, 2007, sale took place at Schleppi's residence, where Detective Lowrie set up his recording equipment in Schleppi's bedroom prior to Mihnovich's arrival. On that occasion, Mihnovich sold twenty hydrocodone tablets to Schleppi. The March 27, 2007, delivery was also set up by Schleppi calling Mihnovich ostensibly to purchase hydrocodone and alprazolam. They agreed to meet at a local sandwich shop where the transaction would take place. As before, Schleppi was provided U.S. currency by the Polk County authorities, and the wireless transmitter was again hidden on her person. After the sale and Mihnovich's departure from the scene, Schleppi again turned over the narcotics to Detective Lowrie. This time, Mihnovich delivered to Schleppi forty tablets of hydrocodone and eighteen of alprazolam. Subsequent testimony indicated the tablets Schleppi acquired from Mihnovich on March 2 had a total weight of 12.97 grams and tested positive for hydrocodone. Testimony also confirmed the narcotics delivered by Mihnovich to Schleppi on March 27 to be hydrocodone and alprazolam, weighing 32.68 grams and 3.45 grams, respectively. Following the conclusion of the State's case-in-chief and the subsequent granting of the directed verdict by the trial court in cause number 19,505, the defense rested without calling a single witness.

## STANDARD OF REVIEW

When a legal sufficiency issue is raised, we must ultimately determine if any rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt, and in making this determination we are required to examine all record evidence in the light most favorable to the jury's verdict. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *McKinney v. State,* 207 S.W.3d 366, 374 (Tex.Crim.App.2006). We consider all of the evidence presented

to the jury, whether properly or improperly admitted. *Conner v. State*, 67 S.W.3d 192, 197 (Tex.Crim.App.2001); *Hill v. State*, 161 S.W.3d 771, 775 (Tex.App.-Beaumont 2005, no pet.). In a legal sufficiency examination of the record evidence, direct and circumstantial evidence are treated equally in that each is as probative as the other in establishing the guilt of an accused. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex.Crim.App.2007). Indeed, circumstantial evidence alone can be sufficient to establish guilt. *Id.*

### ANALYSIS

■■■■ The elements of the offense of delivery of a Penalty Group 3 or 4 controlled substance are: (1) a person, (2) knowingly, (3) delivers, (4) a controlled substance. TEX. HEALTH & SAFETY CODE ANN. § 481.114(a) (Vernon Supp. 2009). An actor may effectuate delivery of contraband by actual transfer, constructive transfer, or by an offer to sell. *Id.* § 481.002(8). "As a matter of law, these are mutually exclusive ways in which delivery of a controlled substance might occur." *Conaway v. State*, 738 S.W.2d 692, 694 (Tex.Crim.App.1987). "Transfer" has been described as "a voluntary relinquishment of possession in favor of another." *Thomas v. State*, 832 S.W.2d 47, 51 (Tex.Crim. App.1992). For proper notice purposes, an indictment alleging the delivery of a controlled substance must specify which type or types of delivery were purportedly performed by the defendant. *See Queen v. State*, 662 S.W.2d 338, 340 (Tex.Crim. App.1983); *Ferguson v. State*, 622 S.W.2d 846, 848–49 (Tex.Crim.App.1980).

■■ In the instant case, all three indictments alleged a single method of delivery: "by constructive[ ] transfer[ ]." Additionally, each indictment alleged the same lone transferee: "Anthony Lowrie." Neither side requested instructions on the law of parties, and the jury's charge contains none. Under these particular circumstances, our legal sufficiency review is therefore somewhat narrowed because even "[a] hypothetically correct [jury] charge may not modify the indictment allegations in such a way as to allege 'an offense different from the offense alleged in the indictment.'" *Gollihar v. State*, 46 S.W.3d 243, 255 n. 20 (Tex.Crim.App.2001) (quoting *Planter v. State*, 9 S.W.3d 156, 159 (Tex.Crim.App.1999)). Consequently, it would be improper to analyze the evidence under any theory of delivery other than by constructive transfer.

■■ A "constructive" transfer requires "the transfer of a controlled substance either belonging to an individual or under his control by some other person or agency at the instance or direction of the individual accused of such constructive transfer." *Daniels v. State*, 754 S.W.2d 214, 220 (Tex.Crim.App.1988). A constructive transfer may also be accomplished when the delivery is made by implication. *See Stephens v. State*, 269 S.W.3d 178, 180 (Tex.App.-Texarkana 2008, pet. ref'd). However, when the State's indictment alleges delivery of the contraband is solely by *constructive* transfer and the evidence indicates an actual transfer was made by the defendant to an unalleged intermediary who then actually transfers the contraband to the alleged ultimate transferee, a conviction will withstand a legal sufficiency challenge only when the evidence also indicates that the defendant contemplated that there would be a third party transferee. *See Sims v. State*, 117 S.W.3d 267, 277 (Tex.Crim.App.2003); *Gonzalez v. State*, 588 S.W.2d 574, 577–78 (Tex.Crim.App. 1979); *Frank v. State*, 265 S.W.3d 519 (Tex.App.-Houston [1st Dist.] 2008, no pet.).

In the instant prosecutions, the State specifically alleged Mihnovich's deliveries

were all accomplished only by *constructive transfer* to a single named transferee, Detective Lowrie. The State's proof consisted only of actual transfers of the contraband by Mihnovich to Schleppi, after which Schleppi would turn over the contraband to Detective Lowrie. Of great significance is a portion of the recorded conversation between Mihnovich and Schleppi at the first transaction on March 2, 2007, admitted into evidence, when Schleppi tells Mihnovich the drugs are for her personal use, and not for resale. Thus, the record contains no evidence indicating Mihnovich ever contemplated that there would in fact be a third party transferee other than Schleppi. *See Sims*, 117 S.W.3d at 277; *Gonzalez*, 588 S.W.2d at 577–78. This requirement has represented the long-standing holding by the Court of Criminal Appeals when, as here, the State alleges the ultimate transferee to be someone other than the intermediary, and also limits the delivery allegation to only *constructive* transfer of the contraband. *See Daniels*, 754 S.W.2d at 221–22; *Gonzalez*, 588 S.W.2d at 577. The Court in *Sims* discussed this rule, which spans roughly thirty years, by citing *Daniels* to further clarify its holding in *Gonzalez:*

> In *Gonzalez* ..., this Court held that a constructive transfer requires the transferor at least be aware of the existence of the ultimate transferee before delivery. This does not mean that the transferor need know the identity of or be acquainted with the ultimate recipient. It only requires that *when the State alleges constructive transfer to an alleged ultimate recipient* that the accused must have contemplated that his initial transfer would not be the final transaction in the chain of distribution. [*Daniels*, 754 S.W.2d at 221 (emphasis added by *Sims*, citation omitted).]

*Gonzalez v. State*, involved an indictment that alleged a transfer to a third party (i.e. not the immediate transferee), but this Court found that there was no evidence that the defendant knew the controlled substance was being purchased on behalf of a third party. [*Gonzalez*, 588 S.W.2d at 577.] It is in this context that the passage in *Daniels* must be read. The articulated rule applies only when the State attempts to obtain a conviction by alleging a recipient that was not the immediate recipient of the contraband. Our conclusion is further supported by the summary in *Daniels* of the rules applicable to constructive transfers:

> 1. Prior to an alleged delivery, the transferor must have either direct or indirect control of the substance transferred. *Rasmussen* [*v. State*, 608 S.W.2d 205, (Tex.Crim.App. 1981) ], *supra.*
>
> 2. The transferor must know of the existence of the transferee. *Gonzales* [sic], *supra.* [*Daniels*, 754 S.W.2d at 221–22.]

The point was not that the transfer must include an intermediary but that the transferor must have knowledge of the transferee. When the transferee alleged is not the immediate transferee, then for the evidence to be sufficient, the defendant must have contemplated that there would in fact be a third party transferee.

*Sims*, 117 S.W.3d at 276–77 (exact footnotes omitted but their contents included within text).

In the instant case, there is ample evidence of an actual transfer from Mihnovich to Schleppi. There is also ample evidence of an actual transfer from Schleppi to Detective Lowrie. As has already been noted, Mihnovich was indicted in all three causes for a constructive transfer of the

contraband to Detective Lowrie, not an actual transfer to Schleppi. There is no evidence in the record, however, which indicates, either directly or circumstantially, that at the time the deliveries took place, Mihnovich was somehow aware that his actual transfers to Schleppi would not be the final transfers in the chain of distribution. *See Sims,* 117 S.W.3d at 276; *Frank* 265 S.W.3d at 523. Without evidence suggesting Mihnovich knew that the contraband was being purchased by Schleppi on behalf of a third person, Mihnovich cannot be guilty of constructively delivering, either on March 2, 2007, or on March 27, 2007, the various items of contraband to Anthony Lowrie, as alleged in the indictments. *See Gonzalez,* 588 S.W.2d at 577–78. Our analysis of the issue, along with the authorities set out above, is in line with the current state of the law applied to an almost identical fact-situation discussed in *Stephens v. State,* 269 S.W.3d 178, 179 (Tex.App.-Texarkana 2008, pet. ref'd), in which the court of appeals reversed and acquitted the defendant on his constructive delivery of controlled substance conviction, and the Court of Criminal Appeals subsequently refused petition for review on February 25, 2009.

Thus, having examined all the evidence in the light most favorable to the verdict, we must conclude that no rational trier of fact could have found the essential elements of the offenses beyond a reasonable doubt. *See McKinney,* 207 S.W.3d at 374; *Stephens,* 269 S.W.3d at 183. Mihnovich's legal sufficiency issues are sustained. We need not reach any of Mihnovich's remaining issues as prevailing on them would afford him no greater relief than is otherwise provided by our disposition of those complaining of legal insufficiency of the evidence. We therefore reverse the judgments of the trial court in trial cause numbers 19,506, 19,507, and 19,508, and we render judgments that Mihnovich is ac-

quitted in all three causes. *See Burks v. United States,* 437 U.S. 1, 18, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978) (holding "that the Double Jeopardy Clause precludes a second trial once the reviewing court has found the evidence legally insufficient[.] ...").

REVERSED AND RENDERED.

DAVID GAULTNEY, Justice, dissenting.

I respectfully dissent. *See* Tex. Health & Safety Code Ann. § 481.002(8) (Vernon Supp. 2009). The statute requires a delivery. A delivery is a transfer of drugs to another. *See id.* The issue presented is whether the transfer to the informant is properly considered a constructive transfer to the detective.

The Court of Criminal Appeals has explained that "[t]here is in fact no specialized 'criminal' meaning for the term 'constructive transfer.'" *Sims. v. State,* 117 S.W.3d 267, 275 (Tex.Crim.App.2003). "Constructive" is a general term. It is intended to encompass all those acts which are considered—by construction of law—to be equivalent to actual transfer, although real possession may not have been conveyed to the identified transferee. *See Donley v. State,* 140 S.W.3d 428, 429 (Tex.App.-Beaumont 2004, no pet.) ("[A] constructive transfer covers a variety of situations where the transferor does not manually transfer the contraband to the transferee, but may include a transfer through an intermediary...."). *Id.* "Constructive transfer" refers to the fact that the transfer of possession to the identified transferee is considered by law to be complete, even though the transferee may not yet have taken actual possession of the drugs.

In this case, the informant purchased the drugs for the detective. She was his

agent. He gave her the money for the purchase and she gave him the drugs. As I view the evidence in this case, when she took possession of the drugs, an actual delivery to her was completed and a constructive delivery to the detective occurred.

The indictment says the drugs were delivered to the detective by "constructive transfer." The defendant was on notice that the transfer to be proven was considered by law the equivalent of an actual delivery. When that happened in this case, defendant understood the indictment and filed a motion asking for the name of the informant. He understood the nature of the charge against him.

In *Heberling v. State*, 834 S.W.2d 350, 354 (Tex.Crim.App.1992), the Court of Criminal Appeals held that an actual transfer or delivery contemplates the manual transfer of property from the transferor to the transferee, or to the transferee's agents or to someone identified in law with the transferee. Under the circumstances of that case, the Court treated the delivery to the agent as an actual delivery to the alleged transferee, rather than as a constructive delivery. *Id.* at 355. Citing civil law, the Court noted that delivery to a buyer's agent is "tantamount to" or "equivalent to" delivery to the buyer. *Id.* at 354 n. 5. The terms "tantamount" and "equivalent" to delivery suggest that, by construction of law, the delivery is considered equivalent to an "actual" delivery to the designated transferee. In *Heberling*, there was also some evidence the transferor knew there would in fact be a third party transferee. *Id.* at 351–52. The indictment alleged an actual transfer, however, not a constructive transfer. *Id.* at 352. Essentially, circumstances that would have satisfied the requirements of a constructive transfer were treated as equivalent to an actual transfer in that case.

The Court of Criminal Appeals has stated nevertheless that "[w]hen the transferee alleged is not the immediate transferee, then for the evidence to be sufficient, the defendant must have contemplated that there would in fact be a third party transferee." *Sims*, 117 S.W.3d at 277. This is required for a specific type of "constructive transfer." It should not be required when the actual transferee is the agent of the constructive transferee.

In this case the jury heard the recordings of the transactions, and may have concluded—based on the conversations about medical records, doctors, legal troubles, mutual acquaintances who had been arrested or turned informant, defendant's warnings to sell the pills "to only people that you know," the informant's own protestation that the pills were for her, the fact that she was previously caught selling drugs, and the obvious friendly relationship between the two—that appellant must have believed she was not the only recipient of the drugs he was providing to her. That is, he "must have contemplated that there would in fact be a third party transferee." *Sims*, 117 S.W.3d at 277. Of course, he did not anticipate the third party transferee would be the police.

This appeal presents a recurring issue. *See Stephens v. State*, 269 S.W.3d 178 (Tex.App.-Texarkana 2008, pet. ref'd.) ("This case presents the exact problem forecast nearly a decade ago by our brother jurist when he opined that the guidelines distinguishing actual delivery of narcotics from constructive delivery of narcotics had become so muddled that prosecuting attorneys who are preparing an indictment would be left with no discernible guidelines to follow.") (citing *Warren v. State*, 15 S.W.3d 168, 173 (Tex. App.-Texarkana 2000, no pet.)); *see also Hubbard v. State*, No. 09–05–430 CR, 2006 WL 3026695 (Tex.App.-Beaumont, Oct. 25,

2006, no pet.) (not designated for publication). The recurring issue arises, I believe, because the term "constructive transfer" has taken a specialized criminal law meaning where none was intended. *See Sims,* 117 S.W.3d at 275. The specialized meaning has sought to distinguish in specific cases actual transfers from other transfers considered equivalent to actual transfers, that is constructive transfers. The approach seems counter to itself, and also seems contrary to the intent of the statute. The language of the statute seems intended to cover all deliveries, not to distinguish between methods of delivery.

Regardless, the fact of agency, under the circumstances here, served to make the delivery actual in the sense that the informant was the detective's "agent" (and the actual delivery to the informant was, under *Heberling,* equivalent to delivery to the detective) and constructive in the sense that the contraband was not really transferred directly from appellant to the detective personally. Under this agency construct, the seller's knowledge of an intended transferee beyond the informant should not be a requirement. The transfer is at its most basic level a constructive one made equivalent by law to a direct "actual" transfer. If the purpose of including the method of delivery in the indictment is to give the defendant adequate notice, and yet an allegation of agency is not a requirement for the indictment, the allegation of constructive transfer accurately notified the defendant of what he was charged with doing.

There is, of course, no evidence appellant knew when he made the delivery he was selling drugs to someone acting as an agent for law enforcement. Nevertheless, the evidence in this case in my view is sufficient to establish a constructive delivery to the detective. The delivery was the legal equivalent of a delivery to the detective under the circumstances, because appellant actually delivered the drugs to the detective's agent.