

# IN THE
# TENTH COURT OF APPEALS

### No. 10-16-00135-CR

**PETE SHANE GONZALES,**

                                          **Appellant**

 v.

**THE STATE OF TEXAS,**

                                          **Appellee**


**From the 18th District Court**
**Johnson County, Texas**
**Trial Court No. F50374**

## MEMORANDUM  OPINION

A jury found Appellant Pete Shane Gonzales guilty of three counts of delivery of more than four and less than two hundred grams of methamphetamine.  After Gonzales entered a plea of "true" to an enhancement, the jury assessed his punishment at ninety-nine years on each count.  Gonzales raises two issues on appeal.  We will affirm.

*Sufficiency of the Evidence*

In his first issue, Gonzales asserts that the evidence is legally insufficient to prove that he actually delivered methamphetamine on any of the dates alleged in the indictment. Specifically, Gonzales contends that he was either not present or did not witness any of the drug transactions, he never touched the drugs involved in any of the three transactions, and he did not receive any compensation for his assistance in setting up the transactions.

The Court of Criminal Appeals has expressed our constitutional standard of review of a sufficiency issue as follows:

> In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). This "familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319, 99 S.Ct. 2781. "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper*, 214 S.W.3d at 13.

*Lucio v. State*, 351 S.W.3d 878, 894 (Tex. Crim. App. 2011).

The Court of Criminal Appeals has also explained that our review of "all of the evidence" includes evidence that was properly and improperly admitted. *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001). And if the record supports conflicting

inferences, we must presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination. *Jackson*, 443 U.S. at 326, 99 S.Ct. at 2793. Further, direct and circumstantial evidence are treated equally: "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper*, 214 S.W.3d at 13. Finally, it is well established that the factfinder "is entitled to judge the credibility of witnesses, and can choose to believe all, some, or none of the testimony presented by the parties." *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).

We measure the sufficiency of the evidence by the elements of the offense as defined in a hypothetically correct jury charge for the case. *Cada v. State*, 334 S.W.3d 766, 773 (Tex. Crim. App. 2011). Such a charge would be one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Id.*; *Gollihar v. State*, 46 S.W.3d 243, 253 (Tex. Crim. App. 2001). The law as authorized by the indictment means the statutory elements of the charged offense as modified by the charging instrument. *See Curry v. State*, 30 S.W.3d 394, 404 (Tex. Crim. App. 2000).

A person commits a crime in Texas if he "knowingly manufactures, delivers, or possesses with intent to deliver a controlled substance listed in Penalty Group 1." TEX. HEALTH & SAFETY CODE ANN. § 481.112(a) (West 2017). Penalty Group I includes, inter

alia, methamphetamine. *Id*. § 481.102(6) (West Supp. 2017). The phrase "to deliver," as it is used in section 481.112, means "to transfer, actually or constructively, to another a controlled substance, . . . regardless of whether there is an agency relationship." *Id*. § 481.002(8) (West 2017). A hypothetically correct jury charge, thus, requires the State to present proof of the following elements: (1) a person, (2) knowingly or intentionally, (3) delivers, (4) a controlled substance. *See Mihnovich v. State*, 301 S.W.3d 354, 357 (Tex. App.—Beaumont 2009, pet. ref'd); *see also Jackson v. State*, 84 S.W.3d 742, 744 (Tex. App.—Houston [1st Dist.] 2002, no pet.). The indictment in this case alleges that Gonzales actually, rather than constructively, transferred the methamphetamine to Rogers on each of the three separate dates specified in the indictment.

While a jury may find a defendant guilty of an offense as a primary actor, a hypothetically correct jury charge would additionally authorize the jury to assess criminal responsibility against a defendant under the law of parties. *Hayes v. State*, 265 S.W.3d 673, 681 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd). "Under the law of parties, '[a] person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or both.'" *Barrientos v. State*, 539 S.W.3d 482, 489 (Tex. App.—Houston [1st Dist.] 2017, no pet.). The hypothetically correct charge would authorize finding a defendant guilty as a party through proof that the defendant acted, with intent to promote or assist the commission of the offense, by soliciting, encouraging, directing, aiding, or attempting to aid the primary actor to commit the offense. TEX. PENAL CODE ANN. §§ 7.01(a), 7.02(a)(2) (West 2011). "Evidence is sufficient to convict under the law

of parties where the defendant is physically present at the commission of the offense and encourages its commission by words or other agreement." *Ransom v. State*, 920 S.W.2d 288, 302 (Tex. Crim. App. 1994) (op. on reh'g); *see also Stewart v. State*, No. 10-11-00291-CR, 2013 WL 3969824, at *5 (Tex. App.—Waco Aug. 1, 2013, pet. ref'd). In determining whether an appellant is a party to an offense, we may consider events occurring before, during and after the commission of the offense. *Rhymes v. State*, 536 S.W.3d 85, 94 (Tex. Crim. App. 2017). We may also consider circumstantial evidence and "look to the actions of the defendant which show an understanding and common design to commit the offense." *Id*. at 95. "Each fact need not point directly to the guilt of the defendant as long as the cumulative effect of the facts is sufficient to support the conviction under the law of parties." *Barrientos*, 539 S.W.3d at 489. Mere presence at the scene of a crime without more is insufficient to support a conviction as a party to an offense. *Id*.

The testimony at trial established that Chris Rogers contacted the Stop Offender Program Special Crimes Unit ("S.T.O.P."), a task force formed to fight drug trafficking, to volunteer to act as a confidential informant. Rogers was referred to Mark Goetz, who was assigned to the S.T.O.P. task force and who ultimately approved Rogers' C.I. status. Rogers testified that he volunteered because he was concerned that his teenaged children were being introduced and provided methamphetamine by Rogers' ex-wife, Victoria Megan Rogers (who goes by Megan), and her boyfriend, Gonzales. Rogers testified that he had an amicable relationship with Megan and Gonzales and had used

methamphetamine with them in the past, although he did not disclose his drug usage to Goetz.

Goetz testified that he agreed to pay Rogers for his assistance. Prior to each transaction, Rogers was outfitted with devices that would provide video and/or audio recordings. Rogers was also provided money to purchase the methamphetamine. The serial numbers of the currency were recorded prior to being given to Rogers.

Rogers testified that he contacted Gonzales and that he asked him to assist in obtaining a quarter ounce of methamphetamine. Rogers further testified that Gonzales and Megan were suspicious at first because it was out of character for Rogers to buy large amounts of methamphetamine. Rogers told them that he was trying to make some money and that he was purchasing the methamphetamine for someone else. Gonzales testified that he was initially reluctant to assist Rogers, but eventually agreed to find someone to sell methamphetamine to Rogers. The initial drug transaction occurred on June 23 and involved a drug dealer named Howell Kenneth Kennemer. Gonzales testified that he made the telephone call that facilitated the drug deal. In a recorded conversation, Gonzales told Rogers the purchase price of methamphetamine from Kennemer and told Rogers the time and location for the exchange. Rogers met with Gonzales and Megan, and Megan accompanied Rogers to make the purchase from Kennemer. Gonzales did not accompany them. In a recorded conversation, Gonzales approached Rogers' vehicle before he left for the transaction and asked for a couple of

dollars. Rogers told Gonzales that he would give him $5 of the $25 that he had already agreed to pay him for arranging the drug transaction. Goetz testified that after the transaction was complete, he paid Rogers $300 for his work.

The second transaction occurred on July 29 and involved a drug dealer named Arturo "Brownee" Garcia and involved a quarter ounce of methamphetamine that was purchased for $250. Rogers testified that he again gave money to Gonzales for his assistance and that Gonzales then used the money to purchase methamphetamine from Garcia for his own use. In a recording of Rogers and Gonzales, Gonzales asked for all of the money. Rogers can then be heard saying to Gonzales, "Here's yours, your $45." After the sounds of bills being counted, Rogers comments, "Here's the $250." After Garcia was arrested, he was in possession of $260 of the $295 given to him by Rogers and Gonzales. Goetz testified that he monitored the transaction and that he determined that Garcia handed the methamphetamine to Gonzales who then transferred it to Rogers. Gonzales testified that he did not handle the methamphetamine and did nothing more than make a telephone call.

The third transaction occurred on August 13 and involved a drug dealer named Anthony Tad Shelton. Rogers first attempted to conduct the transaction with Shelton without Gonzales, but Shelton would not cooperate because he did not know Rogers. After conferring with Goetz, Rogers enlisted Gonzales's assistance and completed the purchase of a quarter ounce of methamphetamine from Shelton. Gonzales had to talk

with Shelton privately in order to get him to complete the transaction. Both Gonzales and Megan were present during the transaction.

Gonzales was not present during the transaction with Kennemer, and he testified that he did not see the drug transactions that Rogers conducted with Garcia and Shelton. Gonzales also testified that he had purchased methamphetamine from Kennemer, Garcia and Shelton on other occasions during the summer of 2015, but he never purchased an amount that cost more than $40 for his own use.

Viewing the evidence in the light most favorable to the jury's verdict, there was sufficient evidence presented for the jury to find that Gonzales actually delivered methamphetamine to Rogers, or was a party in the delivery of methamphetamine to Rogers, on the three dates alleged in the indictment. Although Gonzales testified that he was never paid and never touched the drugs, the jury was free to disbelieve his testimony and credit the testimony of Goetz and Rogers, as well as the recordings of the transactions. *See Chambers*, 805 S.W.2d at 461. Gonzales made the telephone calls that commenced each of the drug transactions and he had prior relationships with the dealers. In each of the transactions, Gonzales negotiated the price of the methamphetamine and the time and place for the exchange. In the transactions with Kennemer and Garcia, Gonzales was compensated for his assistance. In the transactions with Garcia and Shelton, Gonzales was present when the exchanges occurred. Additionally, Gonzales handled the purchase money and the drugs during the Garcia transaction, personally

delivering the money to Garcia and personally delivering the methamphetamine to Rogers. Finally, in the transaction with Shelton, Gonzales managed to get the deal back on track after Rogers nearly ended it by showing up alone at Shelton's house. Gonzales accompanied Rogers to Shelton's house, talked privately with Shelton, and was present when the transaction occurred. Gonzales' first issue is overruled.

### *Excessive Punishment*

In his second issue, Gonzales asserts that the ninety-nine-year sentence he received is excessive in that it is plainly disproportionate to the offenses for which he was convicted and thus constitutes cruel and unusual punishment. Gonzales made no objection at trial regarding the excessiveness of his sentence. To preserve an error for appellate review, a party must present a timely objection to the trial court, state the specific grounds for the objection, and obtain a ruling. *See Curry v. State*, 910 S.W.2d 490, 497 (Tex. Crim. App. 1995) (holding cruel and unusual claim not preserved as defendant made no objection in trial court); *see also Ham v. State*, 355 S.W.3d 819, 825 (Tex. App.—Amarillo 2011, pet. ref'd); *Gertz v. State*, No. 10-11-00008-CR, 2012 WL 3799146, at *2 (Tex. App.—Waco Aug. 30, 2012, no pet.) (mem. op., not designated for publication). "Constitutional rights, including the right to be free from cruel and unusual punishment, can be forfeited by a failure to raise a complaint on specific constitutional grounds in the trial court." *Ham*, 355 S.W.3d at 825; *see also Rhoades v. State*, 934 S.W.2d 113, 120 (Tex. Crim. App. 1996) (holding that complaint of violation of constitutional right to be free

from cruel and unusual punishment was forfeited when no objection on this basis was made to trial court). Because Gonzales did not raise with the trial court his complaint that his three ninety-nine-year sentences were excessive and disproportionate and thus constituted cruel and unusual punishment, issue two is not preserved and is thus overruled. TEX. R. APP. P. 33.1.

Having overruled both issues presented by Gonzales, we affirm the trial court's judgment.

REX D. DAVIS
Justice

Before Chief Justice Gray,
      Justice Davis, and
      Justice Scoggins
Affirmed
Opinion delivered and filed May 30, 2018
Do not publish
[CRPM]

