**Robert Kerklin WYATT, Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 14–95–01339–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

July 3, 1997.

Rehearing Overruled Sept. 18, 1997.

Lewis Dickson, Houston, for appellant.

Joan E. Scroggins, Caldwell, for appellee.

Before YATES, HUDSON and FOWLER, JJ.

## OPINION

HUDSON, Justice.

Appellant, Robert Kerklin Wyatt, Jr., entered a plea of nolo contendere to the offense of delivery of a controlled substance. Pursuant to a plea agreement, the trial court made no finding of guilt and appellant was placed on five years deferred adjudication probation. Later, the State moved to adjudicate appellant's guilt based on several alleged violations

of the conditions of his probation. The trial court went on to adjudicate appellant's guilt and assessed his punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice for a term of 30 years and a fine of $10,000.00. We reverse the judgment of the trial court.

Appellant initially entered a plea of not guilty, and both sides went to trial before a jury. However, while the jury was deliberating on the issue of guilt or innocence, appellant sought permission to change his plea to nolo contendere.[1] The parties entered a plea agreement in which the State recommended five years deferred adjudication. Appellant's plea was accepted and the court decided to follow the State's punishment recommendation.

Several years later, the State filed a motion to adjudicate appellant's guilt on the grounds that he had violated several conditions of his probation. Appellant responded to this motion by challenging the voluntariness of his original plea and waiver of a jury trial. These challenges were overruled. The court then proceeded to adjudicate appellant's guilt and assess his punishment.

In six points of error, appellant contends the trial court erred in refusing to set aside his plea of no contest and waiver of a jury trial because they were not made voluntarily. Specifically, he complains that: (1) the trial court failed to admonish him pursuant to TEX.CODE CRIM. PROC. ANN. art. 42.12 (Vernon 1996); (2) the plea and stipulations falsely led him to believe he had the right to appeal; (3) the evidence was insufficient as a matter of law to support the charges against him; and (4) his trial counsel was ineffective for failing to challenge the sufficiency of the evidence.

Appellant's first, second, and third points of error relate to omissions and errors in the admonitions given by the trial court at the plea hearing. He contends the court failed to advise him that if the court should later adjudicate his guilt, he would have no right to appeal such a determination. He further alleges that this failure, when compounded by the misleading language of the court's other admonitions, gave him the impression he had a right to appeal. Appellant argues that if he had known he would be "throwing himself upon the unbridled mercy of the court" in some later adjudication proceeding, he would not have entered his plea.

Appellant contends that three factors contributed to the involuntariness of his plea: (1) the court's admitted failure to inform him of the potential consequences of a violation of probation; (2) the warning given pursuant to TEX.CODE CRIM. PROC. ANN. art. 26.13(a)(3) (Vernon 1989) that if "the punishment in this case ... does not exceed or go above the amount recommended by the State prosecutor and agreed to by you and your attorney, then you may not appeal your conviction to a higher court unless you have permission from this court"; and (3) the waiver contained in his plea which read:

> I further understand that in the event I am convicted I have the right of appeal to the Court of Criminal Appeals of Texas,[2] and also the right to be represented on appeal by an attorney of my choice or if I am too poor to pay for such attorney or the record on appeal, the Court will, without expense to me, provide any attorney and a property [sic] record for such an appeal, but after consulting with my attorney, I voluntarily, knowingly, and intelligently waive my right to appeal.

■ The Code of Criminal Procedure requires a court deferring an adjudication of guilt to inform the defendant of the possible consequences of a violation of community supervision. TEX.CODE CRIM. PROC. ANN. art. 42.12 § 5(a) (Vernon 1996). These consequences include arrest, detention, a hearing limited to the determination by the court of whether it proceeds with an adjudication of guilt on the original charge, and that no appeal may be taken from that determination. TEX.CODE CRIM. PROC. ANN. art. 42.12 § 5(b) (Vernon 1996). The court of criminal appeals has held that a defendant, who receives deferred adjudication as part of a plea

---

1. The jury later returned a verdict of guilty.

2. The State concedes that the plea documents used in appellant's case were outdated forms designed prior to time when the intermediate courts of appeal acquired jurisdiction over criminal cases. *See* TEX. CONST. art. 5 § 6.

agreement, may raise an involuntariness claim based upon the trial judge's failure to give these admonishments. *Brown v. State,* 943 S.W.2d 35, 42 (Tex.Crim.App.1997). However, the danger of entering an unknowing and involuntary plea is not so great that the failure to give such admonishments will result in a reversal without a showing of harm.

 To show harm, a defendant must prove that (1) he was not personally aware of the information contained in the statutory admonishments, and (2) had he been given such admonishments, he would not have entered a plea of guilty or nolo contendere. *Id.* Here, appellant testified that, at the time of his plea, he was not aware that he could not appeal from a future adjudication of his guilt. Appellant also testified that if he had known he had no right to appeal such a determination, he would not have entered a plea of nolo contendere. Appellant, therefore, made a prima facie showing of harm.[3]

In rebuttal, the State's attorney relied upon appellant's written plea of no contest, in which he stated that he was waiving his right to appeal. The implication, of course, is that the correct admonishments would have made no difference in this case because appellant had freely agreed to give up his right to appeal. Appellant, however, contends the waiver related solely to the plea, *i.e.,* he testified that he believed he was waiving an appeal from the imposition of deferred adjudication, not an appeal following a determination of guilt.

The waiver of appeal is part of a sentence which begins by referring to an appeal *after* conviction:

> I further understand that in the event I am *convicted* I have the legal right of appeal ... but after consulting with my attorney, I voluntarily, knowingly, and intelligently, waive my right to appeal.

(Emphasis added). Therefore, there is some evidence that even if the appellant had been given the admonishments contained in Section 5 of Article 42.12, this information would not have affected the defendant's decision to enter his plea. However, the term "conviction" was not used with precision during the plea hearing. The trial judge, for example, told appellant that if the court followed the State's recommendation, he would not be able to appeal his "conviction" to a higher court without permission. Since the trial court mistakenly referred to appellant's deferred adjudication as a "conviction," it is conceivable that appellant may have intended only to waive his right to appeal from the imposition of the deferred adjudication, not a subsequent determination of his guilt.

The evidence of harm, therefore, is conflicting. In denying appellant's request to set aside his former plea of nolo contendere, the trial judge concluded that the admonitions given prior to the plea were adequate. The trial court, therefore, did not reach the issue of harm or make findings of fact. Because we cannot judge appellant's credibility from the cold record, we also cannot say beyond a reasonable doubt that the error made no contribution to the conviction. TEX. R.APP. P. 81(b)(2). Accordingly, appellant's first, second, and third points of error are sustained.

The appellant's fourth, fifth, and sixth points of error relate to the legal sufficiency of the evidence. When reviewing a challenge to the legal sufficiency of the evidence, we must decide whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Garrett v. State,* 851 S.W.2d 853, 857 (Tex.Crim.App. 1993). Appellant claims that: (1) the legal insufficiency of the evidence rendered his

---

**3.** The court of criminal appeals observed that a defendant's failure to appeal from the imposition of deferred adjudication may constitute some evidence that the information in Article 42.12 § 5 would not have affected his decision to enter a plea. *Brown,* 943 S.W.2d at 42–43. A defendant's failure to appeal from the imposition of deferred adjudication is relevant, however, only if he becomes aware of the information contained in Article 42.12 § 5 while he is still within the time limits for taking an appeal. Here, there is no evidence that appellant became aware of this information until after the State filed a motion to adjudicate his guilt. Moreover, appellant testified that he believed he had waived any right to appeal from the imposition of deferred adjudication by the terms of his plea bargain agreement.

plea of no contest involuntary; (2) his trial counsel's failure to advise him of the legal insufficiency of the evidence or to move for an instructed verdict on that basis rendered his assistance ineffective; and (3) the legal insufficiency of the evidence rendered his waiver of a jury trial involuntary.

Appellant points to the indictment in this case which alleges that he "did then and there intentionally and knowingly deliver, by constructive transfer, to Ralph Bishop II, a controlled substance...." Appellant complains that the evidence produced by the State during his abortive jury trial was insufficient, as a matter of law, to prove the allegations against him. Specifically, he argues that there was no evidence to show that he knew of the existence of the transferee, Ralph Bishop II. We disagree.

■ The record reflects that Sergeant Larry Klehm of the Brenham Police Department was working on a narcotics investigation in Burleson County. On the evening of January 30, 1993, Sergeant Klehm and two informants, Ralph Bishop II and Kathleen Serna, drove to the town of Caldwell to make an undercover purchase of narcotics. Serna drove the vehicle, Klehm rode in the front passenger's seat, and Bishop sat in the rear. The three made their way to an area known as "the flats" on Shaw Street. Once there, they parked the vehicle and were approached by an individual who offered to purchase narcotics for them. When Sergeant Klehm refused to release the purchase money without first inspecting the narcotics, this person brought another man, Charles Carr, over to the vehicle.

Carr asked Klehm what he wanted to buy. Klehm told him "three for fifty," meaning $50.00 of crack cocaine. Carr agreed, said that he knew where he could get it, and that he would check to see if the man was home. He exited the vehicle and walked up a trail which led in the direction of the appellant's house. Carr soon returned, saying the man he needed to see was not home. The group, accompanied by Carr, then drove to a nearby convenience store where Carr got out and

told Serna to drive around the block. Klehm, Serna, and Bishop circled the area for a short time and then rejoined Carr. At this point, Carr informed the group that the man was still not home and that he would have to page him. Klehm watched as Carr used the pay phone at the convenience store to make the call. The group then returned to Shaw Street where they parked the car.

After waiting for several minutes, they drove back to the convenience store and parked in front of an adjacent bakery shop. Almost immediately, appellant's car entered the parking lot and pulled up approximately 15 to 20 feet from the undercover vehicle. Carr got out and ran up to the appellant's window. He reached through the open window and appellant handed him something. Carr quickly returned to the undercover vehicle, got in the back seat with Bishop, and handed him a piece of cocaine. Bishop gave Carr $50.00 and Carr returned to appellant's vehicle and handed him the money.[4] Both vehicles then left the scene.

■ To prove a constructive transfer, the State must show that: (1) prior to the alleged delivery, the transferor had either direct or indirect control of the substance transferred; and (2) the transferor must know of the existence of the transferee. *Daniels v. State,* 754 S.W.2d 214, 221–22 (Tex.Crim.App.1988). Although the front windows of the vehicle were down and the front seats occupied by Klehm and Serna, appellant maintains that since the rear windows of the undercover vehicle were rolled up and tinted, he could not have known to whom, if anyone, Carr delivered the cocaine. A constructive transfer requires the transferor to be aware of the existence of the ultimate transferee, but this does not mean that the transferor must know the identity or be acquainted with the ultimate recipient. *Id.* at 221. It only requires that the accused must have contemplated that his initial transfer would not be the final transaction in the chain of distribution. *Id.*

---

**4.** Carr also took a "bump," *i.e.,* a pinch of the cocaine he allegedly obtained from the appellant. Sergeant Klehm testified that individuals who

arrange narcotics transactions often take a portion of the drugs as payment for their services.

Here, Carr went over to appellant's vehicle and appellant was observed handing some substance to Carr. Carr returned to the clearly occupied undercover vehicle where he handed the substance to Bishop and received payment. Carr then delivered the payment to appellant. Appellant remained for the duration of the transaction, and only departed after receiving the money. *See Swinney v. State*, 828 S.W.2d 254, 257–58 (Tex.App.—Houston [1st Dist.] 1992, no pet.) (noting an accused's presence during the transaction to be a factor in proving constructive transfer). We believe these facts are sufficient to prove the above elements beyond a reasonable doubt. Thus the evidence is legally sufficient to sustain the appellant's conviction for constructive delivery of a controlled substance.

Because the evidence is legally sufficient, there is no merit to appellant's contention that his trial counsel was ineffective for failing to advise him of its insufficiency. *See Riles v. State*, 595 S.W.2d 858, 861 (Tex. Crim.App.1980) (indicating that the failure to make a meritless objection does not render counsel ineffective). Accordingly, appellant's fourth, fifth, and sixth points of error are overruled.

The judgment of the trial court is reversed and the cause is remanded to the trial court for a new trial.