Raelun Cornell STEPHENS, Appellant,

v.

The STATE of Texas, Appellee.

No. 06–08–00022–CR.

Court of Appeals of Texas,
Texarkana.

Submitted July 23, 2008.
Decided Oct. 16, 2008.

Pamala J. Worthington, Gary, for appellant.

Danny Buck Davidson, Dist. Atty., Carthage, for appellee.

Before MORRISS, C.J., CARTER and MOSELEY, JJ.

**OPINION**

Opinion by Justice MOSELEY.

This case presents the exact problem forecast nearly a decade ago by our brother jurist when he opined that the guidelines distinguishing actual delivery of narcotics from constructive delivery of

narcotics had become so muddled that prosecuting attorneys who are preparing an indictment would be left with no discernible guidelines to follow. *Warren v. State,* 15 S.W.3d 168, 173 (Tex.App.-Texarkana 2000, no pet.) (Grant, J., dissenting).

Raelun Cornell Stephens appeals his conviction by a jury for delivery of a controlled substance. The indictment alleged Stephens constructively delivered cocaine to Brady Odom (who at trial was shown to be a Panola County deputy sheriff) in an amount greater than four grams but less than 200 grams. The evidence at trial showed Stephens made an actual delivery of ten grams of cocaine to an undercover confidential informant, who later turned over the cocaine to Odom. Stephens now raises several points of error. Because we find the evidence to be legally insufficient, we reverse the trial court's judgment and render a judgment of acquittal.

## I. Sufficiency

■ Stephens challenges the legal sufficiency of the evidence to support his conviction for "constructive delivery" of cocaine to Odom. In a legal sufficiency review, we examine the evidence adduced in the trial below in the light most favorable to the jury's verdict and ask whether any rational trier of fact could have found all the elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). "[U]nder *Malik v. State,* evidentiary sufficiency should be measured against the 'elements of the offense as defined by the hypothetically correct jury charge for the case....' " *Fuller v. State,* 73 S.W.3d 250, 252 (Tex.Crim.App.2002) (quoting *Gollihar v. State,* 46 S.W.3d 243, 255–56 (Tex.Crim.App.2001), and citing *Malik v. State,* 953 S.W.2d 234, 240 (Tex. Crim.App.1997)). "Such a charge would

be one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Malik,* 953 S.W.2d at 240. "State law, in relevant part, defines 'element of the offense' as the forbidden conduct with the required culpability." *Id.* at 252–53.

The Texas Court of Criminal Appeals has mandated that a complaint alleging insufficiency of the evidence is to be analyzed under the hypothetically correct jury charge. *Gharbi v. State,* 131 S.W.3d 481, 483 (Tex.Crim.App.2003) (allegation which is not statutory element or "an integral part of an essential element of the offense" need not be included in hypothetically correct jury charge); *see Fuller v. State,* 73 S.W.3d 250, 252 (Tex.Crim.App.2002) (allegation which is not statutory element need not be included in hypothetically correct jury charge); *see also Gollihar,* 46 S.W.3d at 256. The charged offense is the act of delivery of cocaine. "The hypothetically correct charge may not modify the indictment allegations in such a way as to allege 'an offense different from the offense alleged in the indictment.' " *Gollihar,* 46 S.W.3d at 255 n. 20 (quoting *Planter v. State,* 9 S.W.3d 156, 159 (Tex.Crim.App. 2000)). As a consequence, it cannot change this charge of constructive delivery to a charge of actual delivery.

The grand jury's indictment alleged that Stephens

on or about the 5th day of October, 2006, and before presentment of this indictment in the County of Panola and State of Texas, did then and there knowingly deliver by constructive delivery to Brady Odom, a controlled substance, namely, cocaine, in an amount of four grams or more but less than 200 grams,

AGAINST THE PEACE AND DIGNITY OF THE STATE.

■ A person commits a crime in Texas if he "knowingly manufactures, delivers, or possesses with intent to deliver a controlled substance listed in Penalty Group 1." TEX. HEALTH & SAFETY CODE ANN. § 481.112 (Vernon 2003); *see also Talley v. State*, 909 S.W.2d 233, 234 (Tex.App.-Texarkana 1995, pet. ref'd). Cocaine is a penalty group 1 narcotic. TEX. HEALTH & SAFETY CODE ANN. § 481.102(3)(D) (Vernon Supp.2008). The phrase "to deliver," as it is used in Article 481.112, means "to transfer, actually or constructively, to another a controlled substance, counterfeit substance, or drug paraphernalia, regardless of whether there is an agency relationship." TEX. HEALTH & SAFETY CODE ANN. § 481.002(8) (Vernon Supp.2008).[1] "An indictment for the delivery of a controlled substance must specify which type or types of delivery was ... performed." *Young v. State*, 183 S.W.3d 699, 706 (Tex. App.-Tyler 2005, no pet.); *see also Warren*, 15 S.W.3d at 170; *Marable v. State*, 990 S.W.2d 421, 423 (Tex.App.-Texarkana 1999), *aff'd*, 85 S.W.3d 287 (Tex.Crim.App. 2002). At trial, the State is required to prove delivery via the method that is alleged in the indictment. *Conaway*, 738 S.W.2d at 694 ("[N]otwithstanding that the State could have alleged both actual *and* constructive delivery, ... it chose only to allege that the delivery occurred by 'actual delivery.' It was thus bound to prove its allegation beyond a reasonable doubt.") (citations omitted); *Warren*, 15 S.W.3d at 170. The indictment may allege multiple theories of delivery. *Conaway*, 738 S.W.2d at 694; *Warren*, 15 S.W.3d at 170.

■ "[A]n actual transfer or delivery, as commonly understood, contemplates the manual transfer of property from the transferor to the transferee *or to the transferee's agents or to someone identified in law with the transferee." Heberling v. State*, 834 S.W.2d 350, 354 (Tex. Crim.App.1992). "If the State proceeds under the theory that an intermediary was an *undercover officer-buyer's* agent or representative, then a defendant could be convicted of an actual delivery under the rule articulated in *Heberling." Marable*, 85 S.W.3d at 291 (Cochran, J., concurring); *see Heberling*, 834 S.W.2d at 354.

A "constructive transfer" requires "the transfer of a controlled substance either belonging to an individual or under his control by some other person or agency at the instance or direction of the individual accused of such constructive transfer." *Daniels v. State*, 754 S.W.2d 214, 220 (Tex. Crim.App.1988); *see also Marable*, 85 S.W.3d at 291. A constructive transfer may also occur when the delivery is made by implication. *See Payan v. State*, 199 S.W.3d 380, 384 (Tex.App.-Houston [1st Dist.] 2006, pet. ref'd), *cert. denied*, 549 U.S. 1170, 127 S.Ct. 1129, 166 L.Ed.2d 898 (2007).

Some appellate jurists have written that a constructive transfer requires the transferor to have actual knowledge of the ultimate transferee. *See, e.g., Daniels*, 754 S.W.2d at 221–22; *Sheffield v. State*, 623 S.W.2d 403, 405 (Tex.Crim.App. [Panel Op.] 1981); *Hart v. State*, 15 S.W.3d 117, 119 (Tex.App.-Texarkana 2000, pet. ref'd) (essential elements of constructive transfer are "transferor had either direct or indirect control of the substance transferred" and "knew of the existence of the transferee"); *Wyatt v. State*, 951 S.W.2d 144, 148

---

1. Delivery may also be accomplished by an offer to sell. *Conaway v. State*, 738 S.W.2d 692, 694 (Tex.Crim.App.1987); *Warren*, 15

S.W.3d at 170 (citing *Ferguson v. State*, 622 S.W.2d 846, 848 (Tex.Crim.App. [Panel Op.] 1980)).

(Tex.App.-Houston [14th Dist.] 1997, pet. ref'd).

Others, including the more recent and binding rulings, do not require proof of knowledge of the identity of an intended third-party transferee. In *Sims v. State*, the Texas Court of Criminal Appeals made a thoughtful and considered analysis of some of the various meanings of "constructive delivery" as employed in Texas. 117 S.W.3d 267 (Tex.Crim.App.2003). The court even quoted *Daniels* for the proposition that the State must show "[t]he transferor ... kn[e]w of the existence of the transferee." *Id.* at 277 (quoting *Daniels*, 754 S.W.2d at 221–22). But the court thereafter wrote, "When the transferee alleged is not the immediate transferee, then for the evidence to be sufficient, the defendant must have contemplated that there would in fact be a third party transferee." *Id.*

■ "[W]hen the State alleges constructive transfer to an alleged ultimate recipient ... the accused must have contemplated that his initial transfer would not be the final transaction in the chain of distribution." *Daniels*, 754 S.W.2d at 221; *see also Marable*, 85 S.W.3d at 291 ("A conviction for delivery of a controlled substance by constructive transfer requires some showing that a defendant-transferor was 'at least aware of the existence of an ultimate transferee before he may be said to have delivered or made a delivery of a controlled substance to another through a third party.' ").

A classic constructive delivery case is *Gutierrez v. State*, 71 S.W.3d 372, 376–77 (Tex.App.-Amarillo 2001, pet. ref'd), wherein the defendant presumably never laid eyes on or communicated directly with the undercover drug officer. In *Gutierrez*, the officer drove his car to a place in front of the defendant's residence. Someone other than the defendant came to the car, communicated with the officer, returned to the residence, and came out with drug samples which he showed the undercover officer. The officer then paid the other individual over $11,000.00; the other individual returned to the residence and brought a substantial quantity of drugs to the undercover officer, still seated in the automobile. When delivery occurred, a raid was conducted inside the residence, where the defendant was found hunched over a commode having drug residue in it. *Id.* Though there was no proof that the defendant knew the identity of the officer seated in the automobile, the appeals court held that the evidence was sufficient to establish constructive delivery. *See id.* at 377.[2]

With these thoughts in mind, we now turn to our application of the hypothetically correct jury charge to the evidence presented in the case now on appeal. By incorporating the statutory definition of

2. One unreported case, addressing a conviction for constructive delivery, involved evidence the transferor defendant did not know of the existence of an ultimate recipient or had directed the intermediary to deliver the substance to that specific (ultimate) transferee. *Terrell v. State*, Nos. 01–99–00901–CR & 01–99–00902–CR, 2000 WL 675666, at *3, 2000 Tex.App. LEXIS 3475, at *5–7 (Tex. App.-Houston [1st Dist.] May 25, 2000, no pet.) (not designated for publication) ("There is no evidence that appellant knew about Collingsworth's role in the sale because, not only were Collingsworth and the other officers not present during the drug transaction, but also, they were too far removed from the scene to hear any conversation between appellant and Smith."). The *Terrell* court also noted that the evidence would have been sufficient to support the appellant's conviction for an *actual* delivery of cocaine to the intermediary between appellant and the narcotics officers, but the State had not made such an allegation in the indictment underlying Terrell's conviction. *Id.* 2000 WL 675666, at *3, 2000 Tex. App. LEXIS 3475, at *7.

"deliver" into the primary statute at issue in this case, we conclude the hypothetically correct jury charge, as authorized by the indictment in this case, required the State to present proof of the following elements: (1) that Stephens, (2) knowingly, (3) constructively delivered, (4) with intent to deliver, (5) cocaine, (6) to some third-party transferee beyond Robert Lewis. Absent proof of each of these elements, we cannot conclude the evidence is legally sufficient to prove constructive delivery in this case.

The evidence at trial, when viewed in the light most favorable to the jury's verdict, showed Stephens sold six or seven rocks of cocaine aggregating about ten grams to a confidential informant, Lewis, on October 5, 2006, for $275.00. David Allen Gray, a deputy with the Panola County Sheriff's Office, told the jury that this amount was what he normally saw distributed to mid-level dealers and was worth about $1,000.00 if sold on the street in subsequent smaller sales. Gray opined that the $275.00 paid by Lewis to Stephens for the ten grams of cocaine was too low to have been considered an amount a typical end user would pay. However, when asked on cross-examination whether ten grams could, in fact, be a "personal use" amount, Gray only answered, "Ten grams is a pretty good amount." And Lewis himself later testified that he had previously purchased six rocks of crack cocaine during a previous sting operation, paying only $100.00 for the drugs on that occasion.

There was no testimony that Lewis brought his own scales to the drug transaction; instead, he and Stephens used Stephens's scales to weigh the drugs. This fact may be significant because it suggests Lewis would appear to Stephens to be an end user who trusted his own dealer rather than a mid-level dealer concerned about receiving an adequate amount for later resale. Additionally, Lewis never testified that he had, in any way or manner, suggested to Stephens—either before or during the drug sale—that Lewis intended to later deliver or resell this cocaine to Odom or anyone else.

Moreover, the State presented no evidence from any other source that Stephens believed Lewis would thereafter specifically transfer the cocaine to Odom or another, that Stephens had directed Lewis to transfer the cocaine specifically to Odom or another, or that Stephens intended for Lewis to transfer the narcotics specifically to Odom or another.[3] Nor did the State present any evidence Stephens knew or should have reasoned that Lewis was an intermediary for Odom or another. Cf. Heberling, 834 S.W.2d at 354. For example, evidence suggesting Stephens had previously initiated contact with Odom for the latter to purchase drugs would support an inference that Stephens knew or should have believed Lewis might be more than a mere end user, assuming Stephens had also been made aware of a connection between Lewis and Odom. Cf. Hubbard v. State, 896 S.W.2d 359, 362 (Tex.App.-Houston [1st Dist.] 1995, no pet.). Or if the evidence had shown a greatly more significant quantity of drugs, then such evidence might support an inference that Stephens knew or should have suspected Lewis was more than a mere end user; but we cannot say that five, six, or seven rocks of cocaine (as opposed to more than a kilogram of cocaine) provides a legally sufficient basis to make such an assumption. Contrast Barrera v. State, No. 14–97–00044–CR, 1999 WL 250724, at *2, 1999

---

**3.** The State points out that Stephens testified that he believed Lewis was a drug dealer and that he had seen Lewis "cooking" crack.

Tex.App. LEXIS 3237, at *3–6 (Tex.App.-Houston [14th Dist.] Apr. 29, 1999, pet. ref'd) (not designated for publication).

Such is true in this case because the State presented no evidence to suggest that Stephens could have assumed Lewis would thereafter deliver, sell, transfer, or convey any or all of the cocaine to another party. To do so, the jury must stack its inferences atop one another. Instead, the evidence in this case supports only the conclusion that Stephens reasonably believed Lewis was purchasing the cocaine for his own personal use. The State presented no direct or circumstantial evidence that is legally sufficient to support a different conclusion with respect to this particular element of the indicted offense.

Absent specific evidence to support the conclusion Stephens knew that a subsequent delivery would be made specifically by the confidential informant to Odom or another, the State's evidence in this case is legally insufficient to prove Stephens constructively transferred cocaine.

The State suggests in its brief that the jury was free to infer from the evidence that Stephens knew Lewis would later transfer the cocaine to one or more persons. The State presented evidence that ten grams of cocaine was a quantity greater than that normally purchased for personal use; the State also presented evidence that Lewis paid less than the typical amount one would expect to pay for that great a quantity of cocaine. This evidence, argues the State, showed Stephens knew or should have known Lewis would not be the final recipient of the narcotics at issue. We find no precedent requiring that result, and we conclude that the evidence wholly fails to show any intent or knowledge by Stephens that there would be some final recipient other than Lewis.

While the State's evidence showed Stephens *actually* delivered cocaine *to Lewis,* the evidence did not go further to prove Stephens had any actual knowledge or intent that these same narcotics would be ultimately transferred to Odom or any third party. Accordingly, because the State did not meet its burden of proof (as set forth by the hypothetically correct jury charge applicable in this case) to show a knowing *constructive* delivery, we have no choice but to conclude the evidence is legally insufficient.

## II. Conclusion

The State's evidence overwhelmingly showed Stephens was a crack dealer. But, unfortunately, the State's evidence did not prove all the essential elements of the specific offense with which Stephens was charged: *constructive* delivery (as opposed to an *actual* delivery to Lewis).

Accordingly, we have no choice but to reverse the trial court's judgment and render a judgment of acquittal. Stephens's remaining issues are moot.