In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-08-00207-CR


NO. 09-08-00208-CR


NO. 09-08-00209-CR


____________________



ALBERT JOHN MIHNOVICH, Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the 258th District Court


Polk County, Texas


Trial Cause Nos. 19,506, 19,507, 19,508 






OPINION


 In three separate indictments, appellant Albert John Mihnovich was charged with
having delivered to "Anthony Lowrie" the controlled substances hydrocodone and
alprazolam "by constructively transferring said controlled substance[s.]" (1) See Tex. Health
& Safety Code Ann. § 481.114(b), (c) (Vernon Supp. 2009). (2) The cases were tried to a jury
in a single action; the result of a pretrial motion filed by the State. Id. § 481.132(b) (Vernon
2003). (3) The jury convicted Mihnovich in three causes and assessed punishment of fifteen
years' confinement in the Texas Department of Criminal Justice, Correctional Institutions
Division in cause number 19,506, and confinement for two years each in cause numbers
19,507 and 19,508 in a state jail facility of the Texas Department of Criminal Justice. (4) 
Among the issues raised by Mihnovich in his appeal from those convictions is that the
evidence at trial was legally insufficient to sustain the convictions. We reverse and render
a judgment of acquittal.

THE TRIAL 


 As set out in the record before us, the underlying facts are relatively simple and not
in dispute. The State's indictments all charged Mihnovich with having constructively
delivered the controlled substances to "Anthony Lowrie." The record indicates that at the
time of the offenses, Lowrie was a detective in the narcotics division of the Polk County
Sheriff's office. During late 2006 or early 2007, Detective Lowrie, with the permission of
the Polk County District Attorney's office, made an agreement with Betty Schleppi, a woman
with pending Polk County drug charges, to have Schleppi surreptitiously purchase narcotics
from individuals who were selling them illegally. Schleppi would then turn the narcotics
over to Polk County authorities who would subsequently prosecute the seller criminally. 
Because Mihnovich was already a person of interest to Polk County authorities with regard
to the illegal sale of narcotics, and because Schleppi knew Mihnovich personally, a series of
illicit purchases by Schleppi from Mihnovich was arranged and consummated.

 The record indicates that only Schleppi made contact with Mihnovich, from the initial
telephone calls to him setting up the time and place of the transactions, to the face-to-face
meetings during which the actual exchange--money for drugs--took place. Prior to each
meeting, Detective Lowrie would provide Schleppi with U.S. currency from which the serial
numbers had been recorded, and Schleppi would be outfitted with a wireless transmitter so
that Detective Lowrie could monitor and record the entire conversation between Schleppi and
Mihnovich. The March 2, 2007, sale took place at Schleppi's residence, where Detective
Lowrie set up his recording equipment in Schleppi's bedroom prior to Mihnovich's arrival. 
On that occasion, Mihnovich sold twenty hydrocodone tablets to Schleppi. The March 27,
2007, delivery was also set up by Schleppi calling Mihnovich ostensibly to purchase
hydrocodone and alprazolam. They agreed to meet at a local sandwich shop where the
transaction would take place. As before, Schleppi was provided U.S. currency by the Polk
County authorities, and the wireless transmitter was again hidden on her person. After the
sale and Mihnovich's departure from the scene, Schleppi again turned over the narcotics to
Detective Lowrie. This time, Mihnovich delivered to Schleppi forty tablets of hydrocodone
and eighteen of alprazolam. Subsequent testimony indicated the tablets Schleppi acquired
from Mihnovich on March 2 had a total weight of 12.97 grams and tested positive for
hydrocodone. Testimony also confirmed the narcotics delivered by Mihnovich to Schleppi
on March 27 to be hydrocodone and alprazolam, weighing 32.68 grams and 3.45 grams,
respectively. Following the conclusion of the State's case-in-chief and the subsequent
granting of the directed verdict by the trial court in cause number 19,505, the defense rested
without calling a single witness. 

STANDARD OF REVIEW


 When a legal sufficiency issue is raised, we must ultimately determine if any rational
trier of fact could have found the essential elements of the offense proven beyond a
reasonable doubt, and in making this determination we are required to examine all record
evidence in the light most favorable to the jury's verdict. Jackson v. Virginia, 443 U.S. 307,
319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); McKinney v. State, 207 S.W.3d 366, 374 (Tex.
Crim. App. 2006). We consider all of the evidence presented to the jury, whether properly
or improperly admitted. Conner v. State, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001); Hill
v. State, 161 S.W.3d 771, 775 (Tex. App.--Beaumont 2005, no pet.). In a legal sufficiency
examination of the record evidence, direct and circumstantial evidence are treated equally
in that each is as probative as the other in establishing the guilt of an accused. Clayton v.
State, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Indeed, circumstantial evidence alone
can be sufficient to establish guilt. Id. 

ANALYSIS


 The elements of the offense of delivery of a Penalty Group 3 or 4 controlled substance
are: (1) a person, (2) knowingly, (3) delivers, (4) a controlled substance. Tex. Health &
Safety Code Ann. § 481.114(a) (Vernon Supp. 2009). An actor may effectuate delivery
of contraband by actual transfer, constructive transfer, or by an offer to sell. Id. §
481.002(8). "As a matter of law, these are mutually exclusive ways in which delivery of a
controlled substance might occur." Conaway v. State, 738 S.W.2d 692, 694 (Tex. Crim.
App. 1987). "Transfer" has been described as "a voluntary relinquishment of possession in
favor of another." Thomas v. State, 832 S.W.2d 47, 51 (Tex. Crim. App. 1992). For proper
notice purposes, an indictment alleging the delivery of a controlled substance must specify
which type or types of delivery were purportedly performed by the defendant. See Queen v.
State, 662 S.W.2d 338, 340 (Tex. Crim. App. 1983); Ferguson v. State, 622 S.W.2d 846,
848-49 (Tex. Crim. App. 1980). 

 In the instant case, all three indictments alleged a single method of delivery: "by
constructive[] transfer[]." Additionally, each indictment alleged the same lone transferee: 
"Anthony Lowrie." Neither side requested instructions on the law of parties, and the jury's
charge contains none. Under these particular circumstances, our legal sufficiency review is
therefore somewhat narrowed because even "[a] hypothetically correct [jury] charge may not
modify the indictment allegations in such a way as to allege 'an offense different from the
offense alleged in the indictment.'" Gollihar v. State, 46 S.W.3d 243, 255 n.20 (Tex. Crim.
App. 2001) (quoting Planter v. State, 9 S.W.3d 156, 159 (Tex. Crim. App. 1999)). 
Consequently, it would be improper to analyze the evidence under any theory of delivery
other than by constructive transfer. 

 A "constructive" transfer requires "the transfer of a controlled substance either
belonging to an individual or under his control by some other person or agency at the
instance or direction of the individual accused of such constructive transfer." Daniels v.
State, 754 S.W.2d 214, 220 (Tex. Crim. App. 1988). A constructive transfer may also be
accomplished when the delivery is made by implication. See Stephens v. State, 269 S.W.3d
178, 180 (Tex. App.--Texarkana 2008, pet. ref'd). However, when the State's indictment
alleges delivery of the contraband is solely by constructive transfer and the evidence indicates
an actual transfer was made by the defendant to an unalleged intermediary who then actually
transfers the contraband to the alleged ultimate transferee, a conviction will withstand a legal
sufficiency challenge only when the evidence also indicates that the defendant contemplated
that there would be a third party transferee. See Sims v. State, 117 S.W.3d 267, 277 (Tex.
Crim. App. 2003); Gonzalez v. State, 588 S.W.2d 574, 577-78 (Tex. Crim. App. 1979);
Frank v. State, 265 S.W.3d 519 (Tex. App.--Houston [1st Dist.] 2008, no pet.). 

 In the instant prosecutions, the State specifically alleged Mihnovich's deliveries were
all accomplished only by constructive transfer to a single named transferee, Detective
Lowrie. The State's proof consisted only of actual transfers of the contraband by Mihnovich
to Schleppi, after which Schleppi would turn over the contraband to Detective Lowrie. Of
great significance is a portion of the recorded conversation between Mihnovich and Schleppi
at the first transaction on March 2, 2007, admitted into evidence, when Schleppi tells
Mihnovich the drugs are for her personal use, and not for resale. Thus, the record contains
no evidence indicating Mihnovich ever contemplated that there would in fact be a third party
transferee other than Schleppi. See Sims, 117 S.W.3d at 277; Gonzalez, 588 S.W.2d at 577-78. This requirement has represented the long-standing holding by the Court of Criminal
Appeals when, as here, the State alleges the ultimate transferee to be someone other than the
intermediary, and also limits the delivery allegation to only constructive transfer of the
contraband. See Daniels, 754 S.W.2d at 221-22; Gonzalez, 588 S.W.2d at 577. The Court
in Sims discussed this rule, which spans roughly thirty years, by citing Daniels to further
clarify its holding in Gonzalez: 

 In Gonzalez . . . , this Court held that a constructive transfer
requires the transferor at least be aware of the existence of the
ultimate transferee before delivery. This does not mean that the
transferor need know the identity of or be acquainted with the
ultimate recipient. It only requires that when the State alleges
constructive transfer to an alleged ultimate recipient that the
accused must have contemplated that his initial transfer would
not be the final transaction in the chain of distribution. [Daniels,
754 S.W.2d at 221 (emphasis added by Sims, citation omitted).]


 Gonzalez v. State, involved an indictment that alleged a transfer to a
third party (i.e. not the immediate transferee), but this Court found that there
was no evidence that the defendant knew the controlled substance was being
purchased on behalf of a third party. [Gonzalez, 588 S.W.2d at 577.] It is in
this context that the passage in Daniels must be read. The articulated rule
applies only when the State attempts to obtain a conviction by alleging a
recipient that was not the immediate recipient of the contraband. Our
conclusion is further supported by the summary in Daniels of the rules
applicable to constructive transfers:


 1. Prior to an alleged delivery, the transferor must have either
direct or indirect control of the substance transferred. 
Rasmussen, supra.


 2. The transferor must know of the existence of the transferee. 
Gonzales [sic], supra. [Daniels, 754 S.W.2d at 221-22.]


 The point was not that the transfer must include an intermediary but that
the transferor must have knowledge of the transferee. When the transferee
alleged is not the immediate transferee, then for the evidence to be sufficient,
the defendant must have contemplated that there would in fact be a third party
transferee.


Sims, 117 S.W.3d at 276-77 (exact footnotes omitted but their contents included within text).

 In the instant case, there is ample evidence of an actual transfer from Mihnovich to
Schleppi. There is also ample evidence of an actual transfer from Schleppi to Detective
Lowrie. As has already been noted, Mihnovich was indicted in all three causes for a
constructive transfer of the contraband to Detective Lowrie, not an actual transfer to 
Schleppi. There is no evidence in the record, however, which indicates, either directly or
circumstantially, that at the time the deliveries took place, Mihnovich was somehow aware
that his actual transfers to Schleppi would not be the final transfers in the chain of
distribution. See Sims, 117 S.W.3d at 276; Frank 265 S.W.3d at 523. Without evidence
suggesting Mihnovich knew that the contraband was being purchased by Schleppi on behalf
of a third person, Mihnovich cannot be guilty of constructively delivering, either on March
2, 2007, or on March 27, 2007, the various items of contraband to Anthony Lowrie, as
alleged in the indictments. See Gonzalez, 588 S.W.2d at 577-58. Our analysis of the issue,
along with the authorities set out above, is in line with the current state of the law applied to
an almost identical fact-situation discussed in Stephens v. State, 269 S.W.3d 178, 179 (Tex.
App.--Texarkana 2008, pet. ref'd), in which the court of appeals reversed and acquitted the
defendant on his constructive delivery of controlled substance conviction, and the Court of
Criminal Appeals subsequently refused petition for review on February 25, 2009.

 Thus, having examined all the evidence in the light most favorable to the verdict, we
must conclude that no rational trier of fact could have found the essential elements of the
offenses beyond a reasonable doubt. See McKinney, 207 S.W.3d at 374; Stephens, 269
S.W.3d at 183. Mihnovich's legal sufficiency issues are sustained. We need not reach any
of Mihnovich's remaining issues as prevailing on them would afford him no greater relief
than is otherwise provided by our disposition of those complaining of legal insufficiency of
the evidence. We therefore reverse the judgments of the trial court in trial cause numbers
19,506, 19,507, and 19,508, and we render judgments that Mihnovich is acquitted in all three
causes. See Burks v. United States, 437 U.S. 1, 18, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978)
(holding "that the Double Jeopardy Clause precludes a second trial once the reviewing court
has found the evidence legally insufficient[.] . . ."). 

 REVERSED AND RENDERED.


 
 __________________________________

 CHARLES KREGER

 Justice


Submitted on October 5, 2009

Opinion Delivered November 12, 2009

Publish


Before McKeithen, C.J., Gaultney and Kreger, JJ.

DISSENTING OPINION



 I respectfully dissent. See Tex. Health & Safety Code Ann. § 481.002(8) (Vernon
Supp. 2009). The statute requires a delivery. A delivery is a transfer of drugs to another. 
See id. The issue presented is whether the transfer to the informant is properly considered
a constructive transfer to the detective. 

 The Court of Criminal Appeals has explained that "[t]here is in fact no specialized
'criminal' meaning for the term 'constructive transfer.'" Sims. v. State, 117 S.W.3d 267, 275
(Tex. Crim. App. 2003). "Constructive" is a general term. It is intended to encompass all
those acts which are considered -- by construction of law -- to be equivalent to actual
transfer, although real possession may not have been conveyed to the identified transferee. 
See Donley v. State, 140 S.W.3d 428, 429 (Tex. App.--Beaumont 2004, no pet.) ("[A]
constructive transfer covers a variety of situations where the transferor does not manually
transfer the contraband to the transferee, but may include a transfer through an intermediary
. . . ."). Id. "Constructive transfer" refers to the fact that the transfer of possession to the
identified transferee is considered by law to be complete, even though the transferee may not
yet have taken actual possession of the drugs. 

 In this case, the informant purchased the drugs for the detective. She was his agent. 
He gave her the money for the purchase and she gave him the drugs. As I view the evidence
in this case, when she took possession of the drugs, an actual delivery to her was completed
and a constructive delivery to the detective occurred. 

 The indictment says the drugs were delivered to the detective by "constructive
transfer." The defendant was on notice that the transfer to be proven was considered by law
the equivalent of an actual delivery. When that happened in this case, defendant understood
the indictment and filed a motion asking for the name of the informant. He understood the
nature of the charge against him. 

 In Heberling v. State, 834 S.W.2d 350, 354 (Tex. Crim. App. 1992), the Court of
Criminal Appeals held that an actual transfer or delivery contemplates the manual transfer
of property from the transferor to the transferee, or to the transferee's agents or to someone
identified in law with the transferee. Under the circumstances of that case, the Court treated
the delivery to the agent as an actual delivery to the alleged transferee, rather than as a
constructive delivery. Id. at 355. Citing civil law, the Court noted that delivery to a buyer's
agent is "tantamount to" or "equivalent to" delivery to the buyer. Id. at 354 n.5. The terms
"tantamount" and "equivalent" to delivery suggest that, by construction of law, the delivery
is considered equivalent to an "actual" delivery to the designated transferee. In Heberling,
there was also some evidence the transferor knew there would in fact be a third party
transferee. Id. at 351-52. The indictment alleged an actual transfer, however, not a
constructive transfer. Id. at 352. Essentially, circumstances that would have satisfied the
requirements of a constructive transfer were treated as equivalent to an actual transfer in that
case. 

 The Court of Criminal Appeals has stated nevertheless that "[w]hen the transferee
alleged is not the immediate transferee, then for the evidence to be sufficient, the defendant
must have contemplated that there would in fact be a third party transferee." Sims, 117
S.W.3d at 277. This is required for a specific type of "constructive transfer." It should not
be required when the actual transferee is the agent of the constructive transferee. 

 In this case the jury heard the recordings of the transactions, and may have concluded
-- based on the conversations about medical records, doctors, legal troubles, mutual
acquaintances who had been arrested or turned informant, defendant's warnings to sell the
pills "to only people that you know," the informant's own protestation that the pills were for
her, the fact that she was previously caught selling drugs, and the obvious friendly
relationship between the two -- that appellant must have believed she was not the only
recipient of the drugs he was providing to her. That is, he "must have contemplated that
there would in fact be a third party transferee." Sims, 117 S.W.3d at 277. Of course, he did
not anticipate the third party transferee would be the police. 

 This appeal presents a recurring issue. See Stephens v. State, 269 S.W.3d 178 (Tex.
App.--Texarkana 2008, pet. ref'd.) ("This case presents the exact problem forecast nearly a
decade ago by our brother jurist when he opined that the guidelines distinguishing actual
delivery of narcotics from constructive delivery of narcotics had become so muddled that
prosecuting attorneys who are preparing an indictment would be left with no discernible
guidelines to follow.") (citing Warren v. State, 15 S.W.3d 168, 173 (Tex. App.--Texarkana
2000, no pet.)); see also Hubbard v. State, No. 09-05-430 CR, 2006 WL 3026695 (Tex.
App.--Beaumont, Oct. 25, 2006, no pet.) (not designated for publication). The recurring
issue arises, I believe, because the term "constructive transfer" has taken a specialized
criminal law meaning where none was intended. See Sims, 117 S.W.3d at 275. The
specialized meaning has sought to distinguish in specific cases actual transfers from other
transfers considered equivalent to actual transfers, that is constructive transfers. The
approach seems counter to itself, and also seems contrary to the intent of the statute. The
language of the statute seems intended to cover all deliveries, not to distinguish between
methods of delivery. 

 Regardless, the fact of agency, under the circumstances here, served to make the
delivery actual in the sense that the informant was the detective's "agent" (and the actual
delivery to the informant was, under Heberling, equivalent to delivery to the detective) and
constructive in the sense that the contraband was not really transferred directly from
appellant to the detective personally. Under this agency construct, the seller's knowledge of
an intended transferee beyond the informant should not be a requirement. The transfer is at
its most basic level a constructive one made equivalent by law to a direct "actual" transfer. 
If the purpose of including the method of delivery in the indictment is to give the defendant
adequate notice, and yet an allegation of agency is not a requirement for the indictment, the
allegation of constructive transfer accurately notified the defendant of what he was charged
with doing. 

 There is, of course, no evidence appellant knew when he made the delivery he was
selling drugs to someone acting as an agent for law enforcement. Nevertheless, the evidence
in this case in my view is sufficient to establish a constructive delivery to the detective. The
delivery was the legal equivalent of a delivery to the detective under the circumstances,
because appellant actually delivered the drugs to the detective's agent. 


 ______________________________

 DAVID GAULTNEY

 Justice


Dissent Delivered

November 12, 2009
1. A single delivery of hydrocodone was alleged to have occurred on March 2, 2007,
while separate deliveries of alprazolam and of hydrocodone were alleged to have taken place
on March 27, 2007. 
2. The relevant portions of the current version of section 481.114 contain the same
language as the version in effect at the time of the offense. We will, therefore, refer to the
current version of the code provision. 
3. In pertinent part, section 481.132(b) reads: "A defendant may be prosecuted in a
single criminal action for all offenses arising out of the same criminal episode." Under
subsection (a)(2) of section 481.132, the definition of "criminal episode" includes the
commission of two or more offenses in violation of the controlled substances act and the
offenses are the repeated commission of the same or similar offenses. 
4. A fourth cause tried along with the other three, cause number 19,505, possession of
a controlled substance, ended when the trial court granted Mihnovich's motion for directed
verdict at the conclusion of the State's case-in-chief.